IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH ANTONIO, et al ) | |
| ) | |
|        Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. AW-05-2982 |
| ) | |
| SECURITY SERVICES OF AMERICA, ) | |
| LLC, et al. ) | |
| ) | |
|        Defendants. ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiffs' Motion for Sanctions Against Defendants SSA Security, Inc., ABM Industries Inc., and Security Services of America, LLC. The Court has reviewed Plaintiffs' Motion, and the opposition and reply thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). The Court hereby GRANTS Plaintiffs' Motion.

### I.   **Background**

In this matter, Plaintiffs seek: 1) an adverse inference instruction regarding all missing documents; 2) to have the Court deny the Corporate Defendants' Motion for Summary Judgment on all grounds which rely on issues of fact relevant to the missing documents; 3) to conduct new depositions of all personnel relevant to the late produced electronically stored information ("ESI") at the expense of the Corporate Defendants; and, 4) an order requiring the Corporate Defendants to pay the fees and costs associated with the filing of Plaintiffs' Motion.

The essence of Plaintiffs' Motion is that the Corporate Defendants engaged in spoliation of evidence. If true, the Court is required to consider several factors in determining how to "level the evidentiary playing field" and to sanction improper conduct. Vodusek v. Bayliner Marine

1

Corp., 71 F.3d 148, 156 (4th Cir. 1995).  Plaintiffs are not seeking the most extreme sanction of dismissal.  Nonetheless, the Court must decide if spoliation has occurred, and what sanction may be necessary to protect the integrity of the judicial process.  In order to grant Plaintiffs' Motion, it must be shown that:

> (1) The party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and, (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

Thompson v. U.S. Dept. of Housing and Urban Devel., 219 F.R.D. 93, 101 (D. Md. 2003).  The Court considers each factor as set forth below.

## II.     The Trigger Date to Preserve Evidence

On December 6, 2004, arsonists caused great destruction at the housing development known as Hunters Brooke (the "Development").  State and federal investigations led to the arrest and convictions of several individuals.  By December 17, 2004, state licensing authorities had seized records from the Corporate Defendants, who in turn began their internal investigation.  On November 2, 2005, Plaintiffs filed the present lawsuit against the Corporate Defendants.

Parties to a lawsuit have a duty to preserve material evidence.  This duty extends to that period before a lawsuit has been filed to the period when each party reasonably should know that evidence may be relevant to anticipated litigation.  Silvestri v General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001). Under these circumstances, the Corporate Defendants were on notice long before November 2, 2005 of the likelihood of litigation regarding their role(s) as employer(s) of those suspected of the arsons.  Serious investigations were under way by the federal and state

authorities shortly following the catastrophic events of December 6, 2004. As evidenced by the Corporate Defendants' privilege logs, it is quite clear that they viewed litigation on the horizon as early as December 16, 2004, if not sooner. Accordingly, the Court finds that a litigation hold was required no later than December 16, 2004. The Corporate Defendants did not issue a litigation hold at all and make no real effort to suggest otherwise. Plaintiffs succinctly note that the Corporate Defendants "only incidentally became aware of some ESI collected for an unrelated investigation over a year after the arsons and months after this litigation had commenced." The only argument the Corporate Defendants can persuasively make relates to the breadth and reach of the litigation hold that applies.

### III.     The Culpable State of Mind

Case law makes clear that before conduct can be sanctioned, the Court must find evidence that a culpable state of mind was possessed by the wrongdoer. "The three possible states of mind that satisfy this requirement are bad faith destruction, gross negligence, and ordinary negligence." Sampson v. City of Cambridge, MD., 251 F.R.D. 172, 179 (D. Md. 2008). The more culpable the conduct, the greater the sanctions to be employed by the Court. If documents are destroyed in bad faith, such as by intentional or willful conduct, the Court can infer that the destroyed documents were relevant. If documents are destroyed by way of gross negligence or ordinary negligence, then the moving party must establish the relevance of the missing documents. Vodusek, at 156; Thompson, at 101. Under either negligence theory, the moving party must show that the evidence was relevant "to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims" sought by the movant. Id. Moreover, if a spoliator's

conduct is merely negligent, neither the dismissal of the action, nor an adverse inference instruction is appropriate. <u>Hodge v Wal-Mart Stores, Inc.</u>, 360 F.3d 446, 450-51 (4th Cir. 2004).

Plaintiffs suggest that information relevant to the arsons at the Development would have most likely been generated or received in the Morehead North Carolina, Lanham Maryland, and Virginia Beach Virginia offices of the Corporate Defendants. Plaintiffs note that the server at the North Carolina office typically contained documents and electronic mail. However, any ESI stored on this North Carolina server was automatically overwritten on a monthly basis. The Corporate Defendants failure to place the litigation hold resulted in the loss of this ESI on a monthly basis.

Employees at all SSA offices could also delete documents and electronic mail from Dec 2004 through July 2005. No systems were in place to create backup copies of data at branch offices such as Lanham or Virginia Beach.

Plaintiffs also have discovered that in July 2005, all ESI information was subject to a conversion to the Corporate Defendants new server. During this process, employees were encouraged to preserve only the ESI which they believed was essential on an individual basis. These employees probably had very little knowledge of which documents were significant to the litigation, or were otherwise not motivated to preserve relevant information. In light of the absence of the notice of the required litigation hold, none of the employees were given guidance as to the preservation requirements of the Court. Equally interesting, all of the employee computers from the Lanham office were lost or destroyed while being moved to Germantown, Maryland.

4

As demonstrated below, Plaintiffs have established at a minimum that a negligent loss of ESI occurred and that "a reasonable factfinder could conclude that the lost evidence would have supported the claims" sought by Plaintiffs. Accordingly, sanctions are appropriate. More troubling, the Court concludes that Plaintiffs have shown the level of willful or intentional conduct of the kind demonstrated in Vodusek. While showing a mere failure to interrupt the usual operations of technology (such as the monthly overwriting of systems) is a demonstration of negligence, the other alarming activities (including but not limited to the corporate destruction of computers, the conversion of operating systems without preservation, the paucity of electronic mail regarding the fires during the most critical investigatory period, the absence of employment records known to be adverse to the Corporate Defendants, and the untimely production of limited ESI) leaves this Court with the firm conviction that the Corporate Defendants' conduct is beyond the level of gross negligence. Bad faith is neither required nor inferred here. Buckley v. Mukasey, 538 F.3d 306, 323 (4th Cir. 2008). However, on this record the Court can infer the relevance and issue the sanction of an adverse inference. For the sake of analysis, the Court observes below that Plaintiffs have demonstrated how the missing evidence is relevant even if they had merely proven misconduct under a negligence standard.

### IV.     The Relevance of the Evidence to the Claims in the Case

The main but not exclusive thrust of Plaintiffs' complaint is that the Corporate Defendants failed to search for and retain ESI. The Corporate Defendants main response is that the majority of materials that relate to the arson at the Development were kept in the form of a physical paper file, including personnel files, schedules, daily activity logs and disciplinary reports. The Court agrees that these are precisely the categories of discovery to which a litigation hold would be

most applicable. The Corporate Defendants are not expected to envision every potential avenue of discovery that might visit the imagination of creative counsel. The more interesting issues in play here are "where" and "in what format" should one expect such materials to have been kept.

From the beginning, the legal exposure of the Corporate Defendants was tied to the employment, training and/or supervision of those individuals employed as security guards for the Development at the time of the fires. Accordingly, the litigation hold was required to reach to those documents that refer, reflect or relate to these issues. These were in large part the very documents the law enforcement authorities obtained copies of within days of the fires. The paper versions of those materials seized by the authorities have been produced in discovery. No one can opine how complete these records were at the time of seizure. While the scope of Plaintiffs' claims are broader than the concerns of law enforcement officials, the objectively reasonable beginning point for the preservation of documents is still limited to the subjects of civil or criminal negligence in employment. It is unreasonable to expect the litigation hold to have reached issues of contract formation between the Development and the Corporate Defendants. Simply put, the Corporate Defendants were required to locate all documents in the hands of those key corporate employees involved with employment, training and/or supervision of guards employed at the development. See Thompson, at 100.

The Corporate Defendants contend that discovery of relevant materials was more properly focused on paper documents over ESI. They suggest that "the Lanham office kept only limited records on its computer," but do not specify the types of records potentially missing and which are available from other sources.

6

The Corporate Defendants note that the security guards in their employ did not have work electronic mail accounts. The bulk of communications with guards were by way of two way radios. The guards were supervised by a three person office based in Lanham, and that only one of these persons, Anne Lee, had an office electronic mail account. Moreover, this singular electronic mail account in the Lanham office was used mainly to communicate with supervisors in the corporate office. The Corporate Defendants' view is that it was unreasonable to expect this lone computer in the Lanham office to possess any relevant information.

Nonetheless, it is equally clear that the Corporate Defendants made no effort of any kind to preserve whatever ESI might have been available. While the search for the "most responsive" paper format documents is not an unreasonable one, the search is not to be limited to what might be viewed as "most responsive." The body of law in this Circuit requires more.

The Corporate Defendants maintained offices in Morehead, North Carolina, Lanham, Maryland, and Virginia Beach, Virginia. The server at the North Carolina office was responsible for overseeing all operations, the preservation of its business files, maintenance of employee personnel files, and the like, and yet no litigation hold was placed to prevent the routine monthly overwriting of documents. Equally, all electronic mail was deleted unless an employee specifically requested otherwise. By the fall of 2005, the Corporate Defendants had completed the conversion to a new electronic mail system which wiped bare all traces of potentially discoverable information. The effect of this conversion was felt in the offices in North Carolina, Virginia, and Maryland.

Plaintiffs point the accusing finger at the absence of electronic mail to and from those in authority at the Lanham office. Brandi Grafton was the Operations Manager of the Lanham

7

office, while Anne Lee was the Manager of the office.  Plaintiffs have concluded that Ms. Grafton and Ms. Lee were willing participants in a cover up of bad conduct regarding employee guards Aaron Speed and William Fitzpatrick.  While the Court has not reached the same conclusion, the existence, disappearance and/or recreation of all relevant ESI is the point of contention.  As to Ms. Grafton, Plaintiffs have offered clear and specific record evidence that she in fact had an electronic mail account long before any conversion to ABM's computer network.  Sadly, the Corporate Defendants offer of deposition testimony to the contrary is simply not persuasive.

More damaging is the discovery of electronic mail from Ms. Lee to the regional vice president, Bobby Cappello, sent on the day following the arson.  This note speaks to several topics, including an interaction with Mr. Fitzpatrick while identifying other concrete items of evidence.  While Plaintiffs characterize this note as evidence of a "cover up" by the Corporate Defendants, the Court does not make the same inferential leap.  However, the fact that Ms. Lee saw fit to address the subject in this fashion does lead the Court to believe there were other similar electronic colloquies.

Plaintiffs complain that in 2006, the computers of five of the corporate officers of ABM were confiscated for purposes of a financial audit, and that Plaintiffs had no knowledge of such for over two years.  Once advised, Plaintiffs no longer had access to the original computers.  By mere happenstance, some information became available after the close of discovery.  In response, the Corporate Defendants note that the hard drive of these computers were copied and searched, and that "deleted and archived emails, were copied and preserved."  As such, it would appear that the electronic mail believed to have been shared between these officials and the Lanham office has been captured.  Yet again, however, Plaintiffs have identified the failure of the Corporate

8

Defendants to search the computer of Don Orcutt, Ms. Lee's direct supervisor. Moreover, these employees could have easily deleted relevant electronic mail prior to the copying of hard drives for the accounting investigation. Plaintiffs also point to a span of 10 days immediately following the fire, where the trail of electronic mail mysteriously disappears. Plaintiffs have good reason to be critical of the "radio silence" that occurred during this most sensitive period. The whole point of the doctrine of spoliation is that neither counsel nor the Court should be left to "guess" what the missing evidence might be.

Aside from ESI, Plaintiffs also note the failure of the Corporate Defendants to produce records relating specifically to the employment history of Aaron Speed. Plaintiffs have obtained deposition testimony from one of Mr. Speed's supervisors, Bradley Messick, referencing multiple written disciplinary issues which in all likelihood should have been reflected in Mr. Speed's personnel file. The Corporate Defendants respond by noting the employment records were mostly in hard paper format, that the law enforcement authorities promptly seized all employment records, and that whatever was contained in the files seized by law enforcement have been produced. Nonetheless, the Court is troubled by this history and is hesitant to accept the notion that the records were kept in such an abysmal fashion that virtually none of the disciplinary write-ups would find their proper destinations.

Obviously, the information on the server in North Carolina is of the most concern, as it appears to have held a far broader scope of material relevant here. According to the testimony provided by Brandi Grafton, the computers at the Virginia office held information regarding licensing and background investigations of the security guards. It seems that much of this information would be equally obtainable from the state licensing and regulatory authorities. The

Court cannot however, speculate as to the other electronic information once held regarding the background investigations and/or personnel actions taken by the Corporate Defendants. Of the three offices, the Maryland office appears the least likely to have held electronic information not otherwise captured in a paper form.

## V. Sanctions

The Court finds that the lost or destroyed evidence was relevant to Plaintiffs claims and that Plaintiffs have suffered prejudice. In addition to an adverse inference, at their own expense Plaintiffs will be allowed to conduct additional discovery from key witnesses who were deposed without the benefit of the now produced electronic mail. Plaintiffs will also be allowed to depose key witnesses, as set forth on page 42 of Plaintiffs' memorandum in support of their motion, relating specifically to the allegations of deliberate spoliation.

## VI. Conclusion

For the reasons set forth above, the Court finds an additional award of fees and expenses incurred by Plaintiffs for the filing of the present motion to be unnecessary. The Court will enter a separate Order consistent with this opinion.


March 29, 2010                    /s/
                                  Charles B. Day
                                  United States Magistrate Judge


CBD/bab