# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH ANTONIO, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. AW-05-2982 |
| | * | |
| SECURITY SERVICES OF | * | |
| AMERICA, LLC, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**************************************************************************

## **MEMORANDUM OPINION**

Currently pending before the Court and ripe for judgment are Defendant SSA's Rule 301.5 Objections to Magistrate Day's Memorandum Opinion (Doc. No. 422), Plaintiffs' Motion to Strike, or in the Alternative Leave to Surreply to SSA's Reply (Doc. No. 444), Defendant SSA's Motion to Strike Plaintiffs' Surreply (Doc. No. 450), Plaintiffs' Limited Objections to Magistrate Judge's Order Sanctioning Defendant SSA, Inc. (Doc. No. 423), Plaintiffs' Motion to Unseal Memorandum Opinion on Sanctions for Spoliation of Evidence (Doc. No. 429), Plaintiffs' Motion for Reconsideration of the Order Granting Summary Judgment on Plaintiffs' Claims Based on Ratification (Doc. No. 425), and Plaintiffs' Motion to Certify Question of State Law to the Maryland Court of Appeals (Doc. No. 449). The Court has reviewed the entire record, including the pleadings and exhibits, with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated more fully below, the Court will GRANT IN PART and OVERRULE IN PART the parties' Rule 301.5 Objections, GRANT IN PART and DENY IN PART Plaintiffs' Motion to Strike, or in the Alternative Leave to Surreply, DENY SSA's Motion to Strike, GRANT Plaintiffs' Motion to

1

Unseal, GRANT IN PART and DENY IN PART Plaintiffs' Motion to Reconsider, and DENY Plaintiffs' Motion to Certify Question of State Law.

## I. Motions to Strike and Motion for Leave to File Surreply

Plaintiffs move to strike SSA's Reply to Plaintiffs' Opposition to SSA's Rule 301.5 Objections ("Objections Brief"), or in the alternative, for leave to file a surreply, on the ground that Defendant SSA raises new arguments in its Reply. Generally, surreply memoranda are not permitted. *See* Local Rule 105.2(a) (D. Md. 2008). However, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003). While Defendant SSA completely incorporated its original opposition into its Objections Brief, and thus none of the arguments Defendant SSA presents in its Reply are entirely new, the Court agrees with Plaintiffs that because SSA's Reply provides specific arguments regarding each incident of spoliation, which the Objections Brief did not, Plaintiffs should have an opportunity to respond to these arguments. As Plaintiffs provide responses to those new arguments in their Motion for Leave to File a Surreply, the Court will consider those rebuttal arguments and will treat the Motion (Doc. No. 444) as a Surreply. The Court does not believe it is appropriate to strike SSA's arguments, and thus the Court will deny Plaintiffs' request to strike the Reply.

Defendant SSA also moves to strike Plaintiffs' Surreply. Since the Court believes that Plaintiffs' Surreply was justified, the Court will not strike it, and will deny Defendant SSA's Motion to Strike Plaintiffs' Surreply.

## II.  Defendant's Rule 301.5 Objections

Defendant SSA Security Inc., d/b/a Security Services of America ("SSA") submits Rule 301.5 Objections to Judge Day's Memorandum Opinion and Order of March 29, 2010, ("Sanctions Order") which ordered sanctions against SSA (Docs. Nos. 410 & 411). SSA objects to the Sanctions Order on the grounds that (1) the grant of further discovery from "key witnesses" is too broad, (2) SSA did not act intentionally or willfully, and thus the adverse inference is unwarranted, and (3) SSA objects to some of the facts provided in the Memorandum Opinion and reserves the right to correct the record. Plaintiffs respond that (1) SSA's objection to the scope of discovery Plaintiffs request pursuant to the Sanctions Order is a discovery dispute that Judge Day should handle, and (2) SSA does not describe any specific errors of law or fact in Judge Day's Opinion that would justify this Court's setting aside the Sanctions Order. The Court has reviewed these objections, and as described below, concludes (1) the Court agrees with Plaintiffs that Judge Day should handle disputes regarding who must be deposed, and (2) the adverse inference against Defendant SSA is reasonable in light of SSA's destruction of a computer and erasure of the operating system, though it would be erroneous to base an adverse inference based on the other conduct the Sanctions Order mentions.

Local Rule 301.5(a) provides that the district judge may "reconsider, modify, or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." D. Md. Local Rule 301.5; *see also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections [to a magistrate judge's decision on a nondispositive matter] and modify or set aside any part of the order that is clearly erroneous or is contrary to law.") "Under the clearly erroneous standard, the reviewing court is not to ask whether the finding is the best or only conclusion permissible based on the evidence. Nor is it to substitute its own conclusions for

that of the magistrate judge. Rather, the court is only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence." *Int'l Ass'n of Machinists & Aero. Workers v. Werner-Matsuda*, 390 F. Supp. 2d 479, 485-486 (D. Md. 2005) (citing *Tri-Star Airlines, Inc. v. Willis Careen Corp.*, 75 F.Supp.2d 835, 839 (W.D.Tenn. 1999)).

First, the Court agrees with Plaintiffs that the question of which people Plaintiffs may depose pursuant to the Sanctions Order is a discovery dispute best handled by Judge Day. The Sanctions Order provides that Plaintiffs may depose "key witnesses" referenced on page forty-two of Plaintiffs' Memorandum in support of their Motion for Sanctions, and also witnesses "who were deposed without the benefit of the now produced electronic mail." (Doc. No. 410 at 10.) The Court believes, however, that these references to witnesses are broad directives rather than specific orders. Moreover, objections to depositions are better raised after notices of depositions have been served, as Plaintiffs note. Any remaining debate over the scope of the Sanctions Order as it pertains to depositions is best addressed by Judge Day, who has ruled on other discovery disputes arising in this case.

Next, the Court reviews Judge Day's conclusion that Plaintiffs have shown that Defendants spoliated evidence with "the level of willful or intentional conduct of the kind demonstrated in *Vodusek*," which he based on the ground that Defendants' conduct constituted more than "a mere failure to interrupt the usual operations of technology," though not bad faith. (Doc. No. 410 at 5.) SSA contends that none of its spoliation of evidence was intentional or willful, while Plaintiffs maintain that all of the conduct Judge Day mentioned was willful and intentional. The Court believes that Judge Day's conclusion that SSA's conduct in (A) destroying corporate computers and (B) converting the SSA operating system was "beyond the level of gross negligence," (Doc. No. 410 at 5) is reasonable, while (C) producing an insufficient

number of emails during the period immediately after the fires; (D) failing to provide employment records that were adverse to SSA; and (E) failing to timely produce ESI, cannot reasonably be interpreted as intentional or willful conduct in this case.

A party seeking sanctions for spoliation must prove three elements: (1) The party having control over the evidence must have breached its duty to preserve the evidence; (2) the breach must be accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered must be "relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Thompson v. United States HUD*, 219 F.R.D. 93, 101 (D. Md. 2003). The parties do not dispute that Judge Day's finding that SSA did in fact breach its duty to institute a litigation hold was reasonable. Rather, resolution of the instant dispute hinges on the difficult evaluation of SSA's culpability in spoliating evidence. The determination is based on a contextual examination of the absent evidence and the reasons provided for its absence.

For a court "[t]o draw an adverse inference from the absence, loss or destruction of evidence, it would have to appear that the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. Md. 1995). For example, in *Vodusek v. Bayliner Marine Corporation*, the court found "that plaintiff's expert's conduct in 'employ[ing] destructive methods which rendered many portions of the boat [at issue in the products liability case] useless for examination by the defendants and their experts,' was willful and necessitated an adverse inference because he 'ignored the possibility that others might have entertained different theories to which the destroyed portions might have been relevant." *Sampson v. City of Cambridge*, 251

F.R.D. 172, 181 (D. Md. 2008) (quoting *Vodusek*, 71 F.3d 155-57). But, "[a] party's failure to produce evidence may, of course, be explained satisfactorily. When a proponent cannot produce original evidence of a fact because of loss or destruction of evidence, the court may permit proof by secondary evidence." *Vodusek*, 71 F.3d 155-57; *see also Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450-51 (4th Cir. 2004) (affirming conclusion that store manager did not willfully lose evidence when she failed to question a witness about the cause of plaintiff's injury because she believed cameras had recorded the incident). With these principles in mind, the Court will examine each basis for spoliation mentioned in the Sanctions Order.

        1.       **Computer destruction, system conversion, and limited emails**

In January 2006, SSA closed its Lanham, Maryland office, consolidating its operations in Germantown, Maryland, and the computer used by Brandi Grafton and Anne Lee was not saved during this transition. On July 1, 2005, SSA completed a conversion of its old Information Technology ("IT") network onto the newer platform of its parent company, ABM. (Doc. No. 354, Ex. 8.) Email correspondence between SSA's and ABM's IT departments shows that the conversion had been proposed prior to the arsons at Hunter's Brooke. (Doc. No. 354, Ex. 3.) On May 24, 2005, apparently in order to streamline this transition, SSA, Inc. requested that its employees only transfer "must have" documents and emails to the new system. (Doc. No. 341, Ex. EE).

SSA argues that any evidence it did not turn over from computers and emails from the Lanham office was not relevant. While SSA claims that there was no relevant information on the Lanham office computer, the ultimate decision of what is relevant cannot be determined by a party's "subjective assessment filtered through its own perception of self-interest," however. *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 512 (D. Md. 2009) Moreover, the managers of

the Lanham office, as the individuals directly responsible for the training, hiring, and supervision of Speed and Fitzpatrick, are clearly "key players" for the purposes of Count V (Negligence) and Count VI (Negligence in Hiring, Training, and Supervision). It seems clear to this Court that any loss of emails, hard drives, and other electronic documents that might have been generated by the Lanham office, its managers, and corporate supervisors would have been potentially relevant to the Plaintiffs claims of negligence (Count VI) and negligence in hiring, training, and supervision (Count V), and that SSA should have known as much.

Additionally, the Corporate Defendants cannot rest on their claim that all possible relevant ESI was recovered "up-stream" from the computers of corporate officers and turned over to the Plaintiffs. SSA asserts that the fortuitous retrieval of some emails "up-stream" from the Lanham office computer makes up for its failure to retain the computer and operating system. The Court does not agree. First, any claim that these emails constitute the entire scope of material sent from the Lanham office computer is unreliable. The audits which recovered these "up-stream" emails were conducted in February, 2006. Thus, with respect to Speed's hiring, there was more than a two-year span where relevant communications could have been deleted or lost, as Speed was hired in December 2003. The same concern applies to the time period between the fires in December, 2004, and the audit in 2006. Second, these emails represent just a sampling of the entire scope of communications sent from the Lanham computer. As noted in *Goodman*, the disclosure of a sampling of documents is insufficient because it does not encompass "the entire universe of relevant documents" that should have been preserved. 632 F. Supp. 2d at 518.

The Court has reviewed similar cases and concludes that there is ample authority for finding the destruction of the computer and the network conversion to be more than grossly

7

negligent. *See Goodman*, 632 F. Supp. 2d at 522-523 ("by failing to preserve her computer, Tracer/PSI knew that the only relevant documents and emails produced by Marty detailing Goodman's role in the project to obtain the EPA exemptions would be those she personally selected. . . . The failure to preserve Marty's laptop and her emails, which was the result of willful conduct, permits 'an inference that [Tracer/PSI and Marty] fear [] [to produce the evidence],' which 'is some evidence that the [information not produced], if brought, would have exposed facts unfavorable to [Tracer/PSI and Marty].'") (quoting *Vodusek*, 71 F.3d at 148); *cf. Sampson v. City of Cambridge*, 251 F.R.D. 172, 181-182 (D. Md. 2008) (finding failure to preserve emails and hard drives negligent because: "neither of the parties' experts was able to give an expert opinion on why no emails exist . . . plaintiff did not present any evidence that would suggest that . . . anyone on behalf of defendant purposely destroyed any documents on the hard drive. . . . [people were instructed] not to delete any electronic files, including emails. . . . there was not a complete erasure of the hard drive."). Accordingly, the Court will overrule the portion of the Objections Brief that protests the Sanctions Order's determination that SSA acted with more than gross negligence when it destroyed the computer and converted the network.

### 2. Limited email, employment file, untimeliness

The Court agrees with SSA that the limited emails, failure to turn over the adverse personnel document, and untimeliness in completing discovery do not indicate willful or intentional spoliation of evidence. First, to the extent that it is unclear if more emails than those produced ever existed, the Court agrees with SSA that the limited number of emails produced does not, alone provide evidence of willful spoliation. Next, Plaintiffs claim that according to the deposition of a former SSA employee, there should have been a document in Speed's personnel file stating that he was not fit for rehire. Plaintiffs argue that since such a document has not been

turned over, it must have been willfully destroyed or lost as a result of the lack of the litigation hold. However, the absence of certain "smoking gun" personnel documents for Speed cannot necessarily be attributed to spoliation. Speed's personnel file was copied by law enforcement on December 6, 2004, the day of the arsons, and it was done prior to any duty to institute a litigation hold. Any personnel document relating to Speed that had existed at the time of the fire would have been turned over to the Plaintiffs from the U.S. Attorney's Office. While SSA's poor record keeping may play a role in showing liability for negligence in hiring practices, this Court agrees with SSA that the Court cannot find the failure to provide this document was willful. Finally, the Court also agrees with SSA that its failure to search and produce ESI in a timely manner is not evidence of willful destruction of evidence. The Court will thus sustain Defendant SSA's Objections to the extent that the finding that the spoliation was more than grossly negligent is based on the limited emails, missing personnel record, and untimeliness in participating in discovery.

### III. Attorneys' Fees and Costs, and Costs of Additional Discovery

Plaintiffs request, pursuant to Federal Rule of Civil Procedure 72 and Local Rule 301.5(a), that this Court review the Sanctions Order's denial of fees and expenses incurred in the filing of the Motion and refusal to require SSA to pay the costs of additional discovery.

A court may issue sanctions under Federal Rule of Civil Procedure 37 when parties commit spoliation in violation of a specific court order or when the spoliation disrupts the court's discovery plan. Rule 37; *Goodman.*; *Sampson v. City of Cambridge*, 251 F.R.D. 172, 178 (D. Md. 2008). Additionally, a court may impose sanctions for spoliation through its inherent authority to control the judicial process. *See Silvestri v. GMC*, 271 F.3d 583, 590 (4th Cir. 2001). An award of attorney's fees or an award of additional costs of discovery are both possible

9

sanctions. Judge Grimm, in *Goodman*, explained that,"[w]hen ruling on a spoliation motion, courts will grant an award of costs or attorney's fees in four situations." The third situation he describes, which is applicable to the situation in this case, is, "in addition to a spoliation sanction, a court will award a prevailing litigant the litigant's reasonable expenses incurred in making the motion, including attorney's fees." *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 505-506 (D. Md. 2009).

Plaintiffs contend that attorney's fees are mandated by Federal Rule of Civil Procedure 37(a)(5) in this case. Plaintiffs note that the Sanctions Order does not describe why reimbursement of fees and expenses is unnecessary, but argue that that the holding is contrary to Federal Rule of Civil Procedure 37(a)(5)(A), which mandates court issuance of attorney's fees against the party whose conduct necessitated the successful motion to compel, absent substantial justification for the behavior, which there was not here. Next, Plaintiffs contend that this Court has "consistently awarded the movant fees and expenses when the movant was prejudiced by the non-movant's intentional spoliation of evidence as here." (Doc. 423 at 3.)

The Court agrees with Plaintiffs that the Sanctions Order's failure to require SSA to pay attorney's fees and costs in connection with the filing of the Sanctions motion was contrary to law. Plaintiffs clearly state in their Motion for Sanctions that they move pursuant to Rule 37. (Doc. No. 341 at 1.) In *Goodman*, Judge Grimm awarded attorney's fees for a movant's successful spoliation motion, finding it appropriate under Rule 37(a)(5), even though he had granted in part and denied in part the motion. *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 505-506 (D. Md. 2009). If a Motion is granted, as it was here (Doc. No. 410),[1] Rule 37(a)(5) mandates that the court to "require the party or deponent whose conduct necessitated the motion,

---

[1] The Court's instant limited alteration of the Sanctions Order does not change the fact that the Sanctions Order granted Plaintiffs' Motion for Sanctions.

10

the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The Rule also provides exceptions, but the Court does not believe they are applicable here. Defendant argues that Judge Day's power to sanction derives from the Court's "inherent authority to regulate the litigation process, rather than from any sanction prescribed by the Federal Rules of Civil Procedure," *Goodman v. Praxair Services, Inc.*, 2009 WL 1955805, *10 (D. Md. July 7, 2009), since the spoliation did not violate a specific court order or disrupt the court's discovery plan. The Court disagrees as Plaintiffs moved under Rule 37. The Court believes attorneys' fees are mandated under Rule 37(a)(5), and thus will modify Judge Day's Sanctions Order, to the extent it does not award attorneys' fees.[2]

Additionally, Plaintiffs contend that they should have been awarded fees and costs for additional discovery granted in the Sanctions Order. Again, Plaintiffs argue "many cases order the non-movant to pay these types of additional discovery costs occasioned by the sanctioned conduct." (Doc. No. 423 at 4.) The Court observes that Plaintiff does not contend that an award of fees and costs for additional discovery is mandatory. Award of attorneys' fees and costs for future depositions remains discretionary under Rule 37. Accordingly the Court will not question Judge Day's decision in this regard. As such, the Court declines to overrule Judge Day's decision not to award costs and fees for additional discovery ordered.

**IV.**     **Plaintiffs' Motion to Unseal**

Plaintiffs move the Court to unseal the Sanctions Order. Plaintiffs provide three grounds for this request: (1) the Fourth Circuit has a strong presumption against sealing judicial records; (2) the Sanctions Order contains important guidance for counsel in discovery while none of the

---

[2] Plaintiffs are directed to file a memorandum consistent with Local Rule 109.2(b) detailing the fees requested, within fourteen days of the entry of this Memorandum Opinion. *See* Local Rule 109.2 (D. Md. 2008).

11

exceptions to the presumptions against sealing exist; and (3) the unsealing is consistent with the parties' Joint Protective Order that states that "pleadings or other court filings that make reference to Confidential Materials, but do not quote therefrom, need not be filed under seal." (Doc. No. 57, Ex. 2.) The Court believes that the unsealing of Judge Day's Sanctions Order would be consistent with the parties' Joint Protective Order, as the Sanctions Order does not quote from any confidential documents. The Court makes this decision in the context of the Fourth Circuit's clear presumption against sealing judicial records. *See Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003). Defendant SSA argues that Plaintiffs' Motion is untimely as it should have been filed as an objection to the Sanctions Order, and thus had to be filed on April 13, 2010. SSA's argument clearly fails as a motion to unseal a judicial record can be made at any time, and the motion is not limited by the rules governing "Objections" under Local Rule 301.5(a). Accordingly, the Court grants Plaintiffs' Motion to Unseal Judge Day's Sanctions Order.

## V. Plaintiffs' Motion for Reconsideration of Summary Judgment

Pursuant to Local Rule 105.10 and Federal Rule of Civil Procedure 54(b), Plaintiffs ask the Court to reconsider its decision in its Memorandum Opinion of March 31, 2010, that Plaintiffs did not present sufficient evidence to create an issue of material fact as to whether SSA ratified its employees' actions in the aftermath of the fires of December 6, 2004. Specifically, Plaintiffs contend that the Court made an erroneous factual finding in concluding that the record did not support the allegations that SSA managers Anne Lee ("Lee") and Brandi Grafton ("Grafton") instructed William Fitzpatrick ("Fitzpatrick") to lie to federal investigators and fabricated evidence to cover up his early departure. Defendant SSA responds that corporate ratification of Fitzpatrick's actions would support only a finding of negligence, and "Plaintiffs[']

reliance on Mr. Fitzpatrick's Declaration cannot prove ratification of the civil rights or intentional tort claims that this Court dismissed." (Doc. No. 432 at 3.) As a preliminary matter, the Court agrees with Defendant SSA that the evidence Plaintiffs contend the Court overlooked pertains only to Plaintiffs' claim that SSA ratified Fitzpatrick's negligent departure, and thus could not alter the Court's conclusion that there is no dispute of material fact that SSA did not ratify any employee's intentional torts. As Defendant SSA does not seem to object to a finding that Plaintiffs have shown a dispute of material fact as to whether SSA ratified Fitzpatrick's negligence, and the Court believes that the evidence Plaintiffs show could potentially be interpreted to raise a dispute of material fact with respect to the issue of SSA's possible ratification of Fitzpatrick's negligence in his early departure from his post, the Court will change its opinion on the one limited issue of whether SSA may have ratified Fitzpatrick's negligence.

Plaintiffs contend that the Court did not consider the direct evidence of the cover-up provided in Mr. Fitzpatrick's Declaration. Additionally, Plaintiffs contend, "the Court should deny Corporate Defendants' motion for summary judgment on Plaintiffs' ratification claims on the basis of the adverse inference Magistrate Judge Day ordered against Corporate Defendants for discovery abuses." (Doc. No. 425 at 4.) In the Fourth Circuit, a Court can amend an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Stanton*, 994 F.2d 1076, 1081 (4th Cir. 2002). Reconsideration is, however, an extraordinary remedy. *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). As the Court stated in its March 31, 2010, Memorandum Opinion, in Maryland, "[r]atification requires an intention to ratify, and knowledge of all material facts." *Progressive Casualty Ins. Co. v. Ehrhardt*, 69 Md. App. 431, 442 (Ct. Spec. App. 1986) (citations omitted).

13

If a principal does not directly state an intent to ratify, such intent "may be inferred by words, conduct or silence on the part of the principal that reasonably indicates its desire to affirm the unauthorized act," including a failure to timely disaffirm the unauthorized acts. *Id.* (citations omitted).

The Court now believes that Plaintiffs have, in fact, pointed to sufficient evidence to show a dispute of material fact regarding whether SSA had "knowledge of all material facts," surrounding Fitpatrick's early departure. The Court believes that the claims Fitzpatrick makes in his declaration—that Lee asked him to tell the FBI that he was on duty throughout his shift, and that Grafton filled out his log—could indicate that Lee and Grafton knew that Fitzpatrick departed from his post early, and that they failed to disavow it. Indeed, the Court is especially struck, upon a re-reading of Lee's deposition, that she does not state that Fitzpatrick told her he remained at his post, but rather, that he had departed to get gas. Though Fitzpatrick told four different stories about the time of his departure, which the Court initially believed barred proof that Lee and Grafton had knowledge that Fitzpatrick left early, the Court has now reconsidered and changed its position on the issue of whether Plaintiffs present sufficient evidence to show SSA ratified Fitzpatrick's negligence in departing his post early. The Court agrees with SSA that Plaintiffs fail to show evidence that would change the Court's conclusion that the evidence on the record does not support the claim that SSA ratified the intentional torts of SSA employees.

Additionally Plaintiffs contend, "the Court should deny Corporate Defendants' motion for summary judgment on Plaintiffs' ratification claims on the basis of the adverse inference Magistrate Judge Day ordered against Corporate Defendants for discovery abuses." In both their Motion for Sanctions and their Opposition to Corporate Defendants' Motion for Summary Judgment, Plaintiffs claim that the missing emails and communications from the time of the fire

14

would reveal knowledge on the part of the Lanham office managers of SSA, Inc.'s liability for the fires, knowledge that Fitzpatrick left his post early, and reveal a subsequent cover-up or ratification of the Individuals Defendants' actions by SSA, Inc. managers and corporate officers. While a ratification argument can be used to attach liability to an employer for the tortious acts of an employee even when the acts are outside the scope of employment, it requires that the employer have "knowledge of all the material facts undergirding the conduct at issue." *Lewis v. Forest Pharms., Inc.*, 217 F. Supp. 2d 638, 660 (D. Md. 2002) (finding that the liability for an employee putting a defamatory letter in a personnel file could vicariously attach to an employer because it ratified the conduct when it did not remove the letter from the file once it was determined to be false). The Court does not believe, however, that the adverse inference would support any of the claims on which the Court has granted summary judgment.

The Court will now allow claims regarding SSA's ratification of Fitzpatrick's negligence to proceed. The Court does not believe there is an appropriate basis to deny summary judgment on the issue of SSA's ratification of employee's intentional torts. Thus, Plaintiffs' Motion is granted in part and denied in part.

## VI.　　PLAINTIFFS' MOTION TO CERTIFY

Plaintiffs move, pursuant to the Maryland Courts and Judicial Proceedings Article of the Maryland Code, § 12-603, to certify the "state law question of first impression" below:

> Whether the Maryland Security Company Statute (Maryland Business Occupations and Professions Code § 19-501) imposes liability beyond common law principles of *respondeat superior* to make security companies responsible for all acts committed by their employees while on duty.

(Doc. No. 449 at 1.) This request is also in accord with the Court's direction in its Memorandum Opinion of March 31, 2010, that "[d]epending on further development of this litigation, it may be appropriate for the Court to consider a motion to certify the question" of what sort of liability the

15

Maryland Security Company Statute (Maryland Business Occupations and Professions Code § 19-501) imposes. (Doc. No. 414 at 21 n.5.)

Under Maryland's certification provision, "[t]he Court of Appeals of this State may answer a question of law certified to it by a court of the United States or by an appellate court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." Md. Code Ann., Cts & Jud. Proc. § 12-603 (2010). Certification is within "the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Generally, the purpose of certification is to "save time, energy, and resources and help[] build a cooperative judicial federalism." *Id.*

The Court does not believe that it is appropriate to certify this question at the present time. While the Court has already made clear that it believes this construction of the Maryland Security Company Statute with respect to liability is a novel issue and finds that the interpretation of this statute could be determinative of an issue in this case, (Doc. No. 414 at 14-15), the Court believes that certification of this question at this stage would cause delay and possibly waste resources. The Court observes that this case has been pending since 2005, and certification of the state law question would cause further delay of the case. Moreover, because the Court has already interpreted the statute since Plaintiffs did not request certification of the state law question in their original Motion for Summary Judgment, certification would not serve the purposes the Supreme Court mentioned in *Lehman Brothers*, of saving time, energy, or resources. 416 U.S. at 391. Furthermore, as Defendants note, there have been no changes in the case since the Court issued its Memorandum Opinion on March 31, 2010, that would warrant certification. Finally, the Court's refusal to certify the question of liability under the Maryland

Security Company Statute (Maryland Business Occupations and Professions Code § 19-501) does not run afoul of the Fourth Circuit's holding in *Johnson v. Collins Entertainment Co.*, which was premised on the abstention doctrine, not Maryland's certification procedure. 199 F.3d 710, 715 (4th Cir. 1999) ("[T]he district court improperly interfered with a state regulatory scheme whose design is at the heart of the state's police power. The district court should instead have abstained under the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 87 L. Ed. 1424, 63 S. Ct. 1098 (1943)").

## VII. CONCLUSION

For the foregoing reasons, the Court will grant in part and overrule in part the parties' 301.5 Objections, grant in part and deny in part Plaintiffs' Motion to Strike, or in the Alternative Leave to Surreply, deny SSA's Motion to Strike, grant Plaintiffs' Motion to Unseal, grant in part and deny in part Plaintiffs' Motion to Reconsider, and deny Plaintiffs' Motion to Certify. A separate Order will follow.

<u>July 16, 2010</u>                                                           <u>/s/</u>
Date                                                                 Alexander Williams, Jr.
                                                                       United States District Judge