# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOSEPH ANTONIO, et al.** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. AW-05-2982 |
| | ) | |
| **SECURITY SERVICE OF** | ) | |
| **AMERICA, LLC, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The Court has received Plaintiffs' Motion for Court Ordered Sanctions for Spoliation of Evidence (ECF No. 468).[1] The Court has reviewed Plaintiffs' Request and all related briefings. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons stated below, the Court GRANTS Plaintiffs' fees and expenses in the amount of $52,734.25.

This case involves the arson of residential property, which Plaintiffs contend was racially motivated. Plaintiffs claim that Defendant Security Services of America, LLC ("SSA") is responsible. During discovery, the Court found that SSA failed in its duty to preserve evidence and is thus inclined to award fees for sanctions.

Plaintiffs' Request arises under Fed. R. Civ. P. 37(a)(5)(A). This rule regarding discovery abuses states that: "[i]f the motion is granted . . . the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . .

---

[1] Because Plaintiffs' Reply in Further Support of Motion for Fees For Sanctions for Spoliation of Evidence ("Plaintiffs' Request") (ECF No. 470), includes a revised fee petition, which amended the original amounts requested, the Court will use the figures provided in Plaintiff's Reply as the starting point for the analysis.

to pay the movant's reasonable expenses incurred in making the motion, including the attorney's fees."  In ruling on the issue of spoliation, the Court did not make an award for fees and expenses incurred by Plaintiffs.  On July 19, 2010, the Honorable Alexander Williams determined that a failure to make such an award was erroneous, and stated "SSA must pay attorney's fees and costs in connection with filing of the Sanctions Motion."  (ECF No. 461).  Now before the Court is Plaintiffs' Request for fees and expenses.

## I.  Calculation of Fees

This Court uses a lodestar analysis to determine attorneys' fees awards, an analysis which involves multiplying a reasonably hourly rate by the number of reasonable hours expended.  Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009), citing Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008).  Reasonableness is key in the analysis and the twelve Johnson factors guide the Court in determining what are "reasonable" hours and rates.  The twelve Johnson factors are:

> (1) time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work: (6) the attorney's expectation at the out-set of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; (12) attorneys' fees awards in similar cases.

See Robinson, 560 F.3d at 243; Barber v. Kimbrell's Inc., 577 F.2d 216, 226, n.28 (4th Cir. 1978) (where the court adopted the factors established in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).  In determining the reasonableness of the fees requested,

the Court also relies upon the Guidelines in the Local Rules, which will be discussed in greater detail below.

For the analysis in the instant case, the Court finds <u>Johnson</u> factors one, two, three and nine most persuasive. Turning to factor one, while the Court may not agree as to the reasonableness of the hours claimed in every situation, it is obvious that considerable time and effort was put forth here. In addition, factor two applies because this case involves the spoliation of electronically stored information ("ESI") evidence. Though ESI is not completely novel, it nevertheless offers some unique challenges, particularly when the issues involve whether a particular document existed or should have existed, such as an email. As such, the Court finds this factor is relevant. Factor three is "the skill required to properly perform the legal services rendered." Here, there is a certain level of complexity in part because of the various parent and subsidiary corporate identities. So while SSA is the focus for this matter before the Court, Plaintiffs had to depose corporate designees of the parent company in order to fully grasp the spoliation issues. Finally, the experience, reputation and ability of the attorney will be a relevant factor in virtually every case, making factor nine germane to the analysis. Ostensibly the more experienced an attorney, the more efficient he or she is expected to perform. Likewise, one would expect that the more experienced the attorney, the higher the fee for legal services would be.

Plaintiffs' position in support of the reasonableness of the billing rates of counsel is offered by the affidavit of Joseph Decker ("Plaintiffs' Affidavit"). Standing alone, Plaintiffs' Affidavit is insufficient. Parties seeking fee awards generally must submit affidavits from non-trial counsel attesting to the reasonableness of their rates. In addition, Plaintiffs' Affidavit also provides the evidence of the hours allocated to performing the various tasks that are "in

connection with the filing of the Sanctions Motion." Both the reasonableness of the hourly rates and the reasonableness of the hours incurred are discussed in turn.

## II. Reasonable Billing Rate

When submitting a fee petition, a party should submit affidavits from other attorneys attesting to the reasonableness of the hourly rates. Robinson, at 245; Grissom, 549 F.3d 313. In both cases, the Fourth Circuit found that the moving party had not provided sufficient evidence of the reasonableness of the hourly rates proposed and both cite the use of affidavits as the preferred method of doing so. The Grissom court stated that the affidavits were necessary because they ensured that the hourly rates requested by the party "coincided with the then prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work, which our case law required him to do." Grissom, 549 F.3d at 323. See also Robinson, 560 F.3d at 245.

While affidavits are the preferred evidence of understanding reasonableness in the context of prevailing market rates, "in the absence of sufficient documentation, the court may rely on its own knowledge of the market." Costar Grp. v. Loopnet, Inc., 106 F. Supp. 2d 780, 788 (D. Md. 2000). See also Hensley v. Eckerhart, 461 U.S. 424, 433 (inadequate information is not necessarily fatal; a court may instead adjust fees accordingly). The Court may supplement with its own knowledge because it "is itself an expert on the question of reasonableness and . . . may form an independent judgment either with or without the aid of witnesses as to value." Id., at 788 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)). In the District of Maryland, this market knowledge is embedded in the Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, Appendix B, Local Rules (D. Md.) (the "Guidelines"). This Court's Local Rules are instructive on the range of reasonable hourly rates based on counsel's

years of experience.  While the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges.[2]  In light of this, Plaintiffs have provided sufficient information for this Court to determine whether the proposed attorneys' fees are reasonable.

For simplicity, a table reflecting Plaintiffs counsels' reduced rates is presented below. It should be noted that the reduced rate figures are in line with those provided in the Local Rules. See Appendix B, Local Rules (D. Md.).

| NAME | FIRM | EXPERIENCE | REDUCED RATE |
|---|---|---|---|
| Shalini Agarwal, Esq. | Washington Lawyers' Comm. for Civil Rights and Urban Affairs | 3 years | $175/hr |
| Donald Paul Amlin, Esq. | Akin, Gump, Strauss, Hauer & Feld, LLP | 4 years | $175/hr |
| Joseph Decker, Esq. | Akin, Gump, Strauss, Hauer & Feld, LLP | 3 years | $175/hr |
| Mary Hahn, Esq. | Washington Lawyers' Comm. for Civil Rights and Urban Affairs | 8 years | $250/hr |
| Cynthia Q. Pullom, Esq. | Akin, Gump, Strauss, Hauer & Feld, LLP | 1 year | $150/hr |
| Michele A. Roberts, Esq. | Akin, Gump, Strauss, Hauer & Feld, LLP | 29 years | $400/hr |
| Steven H. Schulman, Esq. | Akin, Gump, Strauss, Hauer & Feld, LLP | 16 years | $300/hr |
| Allison Walsh Sheeedy, Esq. | Akin, Gump, Strauss, Hauer & Feld, LLP | 3 years | $175/hr |
| Scott Stemetzki (Paralegal) | Akin, Gump, Strauss, Hauer & Feld, LLP | Not provided | $100/hr |
| Larry E. Tanenbaum, Esq. | Akin, Gump, Strauss, Hauer & Feld, LLP | 39 years | $350/hr |

---

[2] Footnote 6 in Appendix B, Local Rules (3) provides important insight regarding the purpose and use of the fee ranges in the Local Rules:

These rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees. The factors established by case law obviously govern over them. One factor that might support an adjustment to the applicable range is an increase in the cost of legal services since the adoption of the guidelines. The guidelines, however, may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases.

Appendix B, Local Rules (3) n.6 (D. Md.).

| Isabelle Thabault, Esq. | Washington Lawyers' Comm. for Civil Rights and Urban Affairs | 32 years | $350/hr |
| --- | --- | --- | --- |
| Jessica Weisel, Esq. | Akin, Gump, Strauss, Hauer & Feld, LLP | 15 years | $275/hr |

The Court is of the view that the hourly rates for counselors as set forth above are reasonable.

## III. Reasonable Hours

Plaintiffs have the burden of demonstrating that the fees and hours requested are reasonable. Costar Group, 106 F. Supp. 2d at 788. The fees and costs associated with the hours incurred regarding various depositions, briefings and hearings will be considered as the Court finds they were incurred "in connection with the Sanctions Motion" as ordered by Judge Williams.

Plaintiffs engaged in block billing rather than the recordation of contemporaneous time records. Block billing is a practice where an individual keeps time records that reflect many different tasks grouped together and only provides one time entry for those tasks as a unit. The problem here is that block billing makes it a challenge to parse out "the portion of work performed on each included task." Miller v. U.S. Foodservice, Inc., 2006 WL 2547212 *1 (D. Md. 2006).

In this situation, the issue becomes whether the records presented for the Court's review allow for a proper determination of the reasonableness of Plaintiffs' Request. The Court does not agree with SSA's assertion that "[b]ecause Plaintiffs did not include the exact time breakdowns contemporaneously when they completed the task, their post-hoc revisions are speculative and not recoverable." (Def. Mot. 6). SSA objects to virtually every single entry recorded by Plaintiffs. In most instances, Defendants objections are completely redundant and

boiler plate.  That said, Defendants observations are not wholly without merit.  There are

instances where parsing out tasks and the time allocated are impossible without reducing the

analysis to pure speculation and thus those time entries are omitted in the final calculation.

Contemporaneous time records are the preferred method to account for the hours

requested by a moving party.  Costar Group, 106 F. Supp. 2d at 788.  However, summary charts

can be sufficient.  Id.  (Noting a summary chart was adequate, though contemporaneous time

records are ideal).  An adequate summary chart must include enough information for the Court to

rule on the reasonableness of the award; "the records must specify, for each attorney, the date,

the hours expended and the nature of the work done."  Id.  Cf. Hensley v. Eckerhart, 461 U.S.

424, 437 n. 12 (1983) (a party "is not required to record in great detail how each minute of his

time was expended.  But at least counsel should identify the general subject matter of his time

expenditures.").  Like the chart in Costar Group, the charts here include an adequate description

of each task worked on, the attorney working on the task, the date, and the amount of time spent

on the specific task. [3]

---

[3] In Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda, 390 F. Supp. 2d 479 (D. Md.
2005), the District Judge reversed a sanction award made by this member of the bench.  The District Judge
found that information presented to the Court for a sanctions award was inadequate because "the
documentation is not in the form of contemporaneous time records, but instead in a summary chart."  Id., at
490.  However, the overarching reason for the reversal was that the award was too large.  The
documentation itself was inadequate because "the records supplied do not enable the court to count with
any precision the hours that would properly be spent…".  Id.  While the opinion is critical of the kind of
information used to determine the award amount, the focus is on ensuring that the Court has sufficient
information to rule on reasonableness and not necessarily on form.  Lastly, the judge in International Ass'n
of Machinists was the same judge as in Costar Group, where she accepted the summary chart as providing
sufficient information to make an award.

## 1. Deposition of Kevin Hume

SSA identified Kevin Hume as a corporate designee.[4]  As a former SSA employee, his employment involved SSA's computer systems.  Mr. Hume was deposed on June 10, 2009, in Norfolk Virginia regarding his role in the preservation of certain electronically stored information ("ESI").   A total of 16.1 hours was allocated for this task by two attorneys.  Plaintiffs are now seeking a total of $2,967.50.

Plaintiffs seek fees for 5.5 hour of work provided by Mr. Decker, on June 8, 2009, regarding the following tasks: "meeting, draft e-document deposition outline, complete review of cases for opposing SMJ on tortious interference with contract."  (Pls. Aff. Ex. 1).  This Court cannot make a determination of the reasonableness of this entry.  The references are vague and the Court cannot discern the relationship of the task performed for the Sanctions Motion issues.

 Making such a determination is essentially a two step process.  First a court must be able to identify the work involved in accomplishing the task.  Next a court must then determine if the time allocated to accomplish the task is reasonable.   Here, the Court cannot identify the work being claimed, and therefore cannot determine if the time allocated to accomplishing the tasks was reasonable.

On June 10, 2009, Mr. Decker initially claims 7.0 hours of travel time.  Presumably this was to and from the deposition of Mr. Hume, however this entry fails to explicitly provide such information.  Because this entry was made in the context of Mr. Hume's deposition, the Court finds it sufficient.  Mr. Decker reduces this time to 3.5 hours claiming this district's Local Rules as the basis.  The relevant portion of the Local Rules state that "[t]ime spent in long-distance

---

[4] There were two other depositions of corporate designees. Martin Sances was deposed in San Francisco on July 14, 2009, and Noel Espiritu was deposed in San Francisco on July 15, 2009, which will be discussed below.

travel above the two (2) hours limit each way, that cannot be devoted to substantive work, may be charged at one-half of the lawyer's hourly rate."  Appendix B, Local Rules (2)(e)(iii) (D. Md.).  Because the total travel time was 7.0 hours, the following calculation is more consistent with the Local Rules.  Four hours will be billed at Mr. Decker's regular approved rate of $175 per hour, which totals $700.  The remaining 3.0 hours shall be billed at half the hourly rate, or $87.50, which totals $262.50.  Thus the total amount for travel to and from this deposition will be $796.25.

On June 10, 2009, Mr. Decker also claims to have spent 5.1 hours on the following tasks: "prepare and revise outline; prepare for deposition; take deposition; follow up on deposition issues."  (Pls. Aff. Ex. 1).  While the preference is for a more detailed break-down of time (i.e., x hours were dedicated to preparation, the deposition itself took x hours, etc.), this entry is reasonable because this period of service was clearly dedicated solely to the deposition of Mr. Hume.  The fees earned for this entry is $892.50.

On June 10, 2009, attorney Mary Hahn's entry states "review deposition outline and confer [with] J. Decker re: same (2.0)."  (Pls. Aff. Ex. 1).  SSA claims this is not compliant with the Local Rules because it is duplicative of Mr. Decker's time entry.[5]  According to Plaintiffs' Affidavit, the two hour deduction by him on this same date is to reflect Ms. Hahn's entry.   The Court does not agree that Plaintiffs are double billing.  Here it appears there was an intra-office conference in connection with the deposition, which is specifically related the sanctions for spoliation.  Further, it seems that the compensation being sought is only for the more senior

---

[5] The Local Rules permit compensation for the attendance of more than one lawyer "where justified," at an inter-office conference.  Appendix B, Local Rules (2)(d) (D. Md.).  However, the general approach is that only one lawyer is compensated for attendance at a conference, whether it be with a client, third party or intra-office.  Absent adequate "justification," the Court subscribes to the general approach that one lawyer will be compensated for a conference.

attorney. The Court finds the 2 hours claimed by Ms. Hahn is reasonable. At her reasonable hourly rate of $250, this comes to $500.00.

Thus, the Court finds that Mr. Decker's reasonable hours for this section are 12.1, totaling $1,688.75. In addition, Ms. Hahn's total is $500.00. This results in a total award of $2,188.75 regarding Mr. Hume's deposition.

## 2. Depositions of Noel Espiritu and Martin Sances, Esq.

Here, Plaintiffs' Affidavit combines billing for two depositions of two additional corporate designees.[6] An ABM[7] computer systems employee, Noel Espiritu, was deposed "regarding his role in converting SSA's email system and his role in the preservation of SSA data." (Pls. Aff. 7). Martin Sances was deposed as corporate counsel for ABM regarding his role in the preservation of SSA data and documents.[8] Plaintiffs Request claims that two attorneys, Joseph Decker and Steven Schulman, invested a total of 43.2 hours seeking a total of $9,470.00 for the taking of said depositions. In addition, Plaintiffs claim $3,437.20 for traveling and $1,500.45 for costs associated with the taking of the two depositions.

On July 6, 2009, Mr. Decker's claims 5.1 hours to "[r]eview [e]lectronic [d]ocuments; prepare letter; [m]eet regarding depositions; draft outline and revise." (Pls. Aff. Ex. 2). SSA argues "[h]e is reviewing unnecessary documents and preparing the same letter as he did on 7/2/2009. Additionally, Plaintiffs are billing for Ms. Hahn, Mr. Decker and Mr. Schulman to meet on the depositions, in violation of the Local Rules."

---

[6] These depositions should be treated separately. However, the Court is analyzing these two depositions together because the lack of clarity in Plaintiffs' Affidavit, Exhibit 2, makes it impossible for the Court to properly address each deposition individually.

[7] ABM is the parent company of SSA, LLC. (ECF No. 341-4 Sealed Motion).

[8] Plaintiffs' Affidavit Exhibit 2 provides several entries that Plaintiffs have voluntarily omitted. The Court will not consider these abandoned entries.

Under the Local Rules, compensation for all attorneys at a meeting is generally not permitted; and where possible, the Court must have sufficient detail as to the purpose of the meeting. The record must reflect more than simply to "meet on depositions," and the other entries are also lacking specificity. Further, this information is inherently suspect when not reflected on the original billing document. Therefore, the Court rejects Mr. Decker's July 6, 2009 invoice entry.

On July 6, 2009, Mr. Schulman's entry states: "[r]eview and revise letters; review Hume deposition; conference with M. Hahn, J. Decker re depositions," which required 3 hours. Multiple billings for the multiple attendees is again problematic as is the lack of clarity of the time devoted to each, and the nature of the letters reviewed. This entry is rejected.

On July 9, 2009, Mr. Schulman claims one hour to prepare for depositions. While the Court would prefer a more detailed entry, here given the context, the Court is able to discern the task being invoiced. SSA states "Mr. Schulman's time should be rejected as vague. Mr. Schulman does not define the deposition he is preparing for and Mr. Schulman only took one of two depositions. This entry should be rejected." SSA resolves its own query: presumably if Mr. Schulman only took one of the two depositions, then he was preparing for the deposition of Mr. Sances, which he took on July 14, 2009. The Court finds one hour allocated to this task is reasonable.

Mr. Decker's entry for 6.9 hours on July 13, 2009 is rejected. SSA notes that Mr. Decker "duplicates the work of another attorney by billing for 'assist with outlines and back-up.'" Mr. Decker also claims "[r]eview electronic documents . . . prepare deposition notices; review documents (on plane)." The Court is unable to determine the reasonableness of any specific task or how much time was allocated to any task.

The entry for Mr. Decker on July 14, 2009, invoices 4.9 hours. The entry states: "[r]eview and prepare outline; [p]repare exhibits; conduct deposition; follow-up on loose ends and redraft outline for next day's depositions." (Pls. Aff. Ex. 2). Plaintiffs' comments are as follows: "Pursuant to Local Rules, Mr. Decker did not include the deposition itself which was conducted by Mr. Schulman, nor preparing exhibits and reduced the entry by four hours, which is more than reasonable." Thus, it appears Mr. Decker is suggesting 4 hours to review and prepare an outline, follow-up on loose ends and redraft an outline for a deposition the next day. The Court finds that for the preparation for the deposition of Mr. Sances, which lasted 2.2 hours, 4 hours is reasonable.

On July 14, 2009, Mr. Schulman deposed Mr. Sances. The deposition itself required 2.2 hours. The total time allocated to this entry, which includes preparation and review of spoliation cases, is four hours. The Court finds this entry is reasonable.

On July 15, 2009, Mr. Decker claims 3.2 hours to "[p]repare outline; conduct deposition; follow-up with opposing counsel." Problems with this entry abound. The Court cannot determine how much time was allocated and consequently if such time was reasonable. Plaintiffs note that "to the extent follow-up with opposing counsel is vague, the reduction of the time for preparation and taking a deposition to 3 hours is more than reasonable." This still does not resolve the question of exactly how long the deposition of Mr. Espiritu lasted. While 3.2 hours represents a reduction, that is of little assistance to the task of the Court to make a meaningful determination as to the reasonableness of this invoice. For all the reasons stated above, this entry is rejected.

On July 16, 2009, Mr. Decker claims 4.8 hours for "Deposition follow-ups and discovery letter research; get old correspondence and verify lit-hold argument." Mr. Decker further states

"[t]his time is all related to the depositions and the timing of discovery disputes related to electronic documents." The Court finds this entry includes the requisite specificity and therefore finds it reasonable.

Mr. Schulman's travel to and from San Francisco, California, for the purpose of deposing Mr. Sances on July 14, 2009, is reflected in entries made on July 15, 2009 and July 16, 2009. The total unadjusted time is ten hours; five hours each way. Thus pursuant to the Local Rules, for the trip from Washington, D.C. to San Francisco, Mr. Schulman's hourly fees total $1,050. (Two hours times his normal rate of $300 per hour, plus, three hours at half his rate of $150.) The same applies for the trip home. Thus Mr. Schulman's fees for travel total $2,100.00.

Mr. Decker also traveled on July 13, 2009 and July 16, 2009, for the purpose of deposing Noel Espiritu on July 15, 2009. The Court will include travel to San Francisco as it is clear Mr. Decker conducted the deposition. The total unadjusted travel time is ten hours; five hours each way. Thus pursuant to the Local Rules, for the trip from Washington, D.C. to San Francisco, Mr. Decker's hourly fees will amount to $612.50. (Two hours times his normal rate of $175 per hour, plus, three hours at half his rate of $87.50.) The same applies for the trip home. Thus Mr. Decker's total traveling fees amount to $1,225.00.

The total for this section is as follows: Mr. Decker's total adjusted reasonable hours is 8.8 hours at his adjusted hourly rate of $175 per hour amounts to $1,540.00. This figure, together with Mr. Decker's fees while traveling, totals $2,765.00. Mr. Schulman's total adjusted reasonable hours are 5 hours at his adjusted hourly rate of $300 per hour amounts to $1,500.00. This figure, together with Mr. Schulman's traveling amount, totals $3,600.00. In total, the Court awards fees in the amount of $6,365.00 for these depositions.

3. <u>Plaintiffs' Memorandum in Support of Sanctions for Spoliation</u>

Exhibit three represents the time spent drafting and filing Plaintiffs Motion for Sanctions,[9] which is the underlying of the motion.  There are 44 separate "blocks" in this exhibit, representing the efforts of nine different individuals, regarding a purported 188.7 hours of legal services for a total of $36,361.50. SSA notes that in many instances there has been a number of attorneys working on Plaintiffs' Motion.  "Some attorneys were involved in every piece of the briefing, while others participated only in small assignments at different times.  This leads to confusion over which attorney did what assignment and whether there was redundancy in work product and review, particularly considering the vague nature of Plaintiffs' time entries."  The Court finds some merit in SSA's contentions.  Plaintiffs note that "[t]hree associates drafted, prepared and filed the memorandum brief and two supervising attorneys [provided] substantive edits.  The remaining time entries for which Plaintiffs seek fees represent 3.6 hours for two attorneys who provided additional input."  (ECF No. 470).  Unfortunately, Plaintiffs do not specifically identify the individual attorneys in these respective roles.  While this might be decipherable from the information somewhere, it is not the Court's duty to decode a party's record for such detail.

On its face, $36,361.50 seems an exorbitant amount for this particular motion.  Plaintiffs claim their "requests are not out of line with similar awards of fees for motions for ESI spoliation [motions] of similar size and complexity."  The Court is not persuaded that page length and the number of exhibits alone, necessarily determines the complexity or how comprehensive or labor

---

[9] This includes Plaintiff's Motion for Sanctions Against Defendants SSA Security, Inc., ABM Industries, Inc., and Security Services of America, LLC (ECF No. 341) and all accompanying documents.

intensive a motion for spoliation of ESI is.  In addition, the case Plaintiffs site as being "similar," awarded only $16,000, not $36,361.50 as Plaintiffs suggest here.[10]

As previously noted, an overwhelming majority of the invoice entries made were vague. While the Court does not find an outright rejection is warranted, some reduction is appropriate. Further, in many instances it appeared that multiple people were working on the same particulars of the same project on the same day.  Perhaps, each individual was working on a different section or perhaps they were working together.  However, because Plaintiffs chose to employ a block billing scheme, at times the Court was unable to establish what an individual's effort pertained to.

### a. Shalini Agarwal, Esq.

Ms. Agarwal's most frequent entry is to "revise" or "review" the Spoliation Motion. (E.g. August 11, 2009, "Review draft of spoliation motion," and on August 13, 2009, "revise motion for sanctions.")  According to Plaintiffs' Affidavit, Ms. Agarwal is claiming 40.4 hours. The Court finds this number of hours to be lacking in support, particularly given the many vague entries.  As such, the Court will apply a 30% reduction and allow 28 hours.  At Ms. Agarwal's adjusted reasonable hourly rate of $175 per hour, her total is $4,900.00.

### b. Joseph Decker, Esq.

According to Plaintiff's Affidavit, Mr. Decker's efforts involved 62.3 hours.  In addition, Mr. Decker seeks 14.9 for work done "at a paralegal's rate."  Presumably this billing variance is to account for tasks such as "collecting exhibits," etc., which both parties correctly note, does not require the expertise of an attorney.  In terms of the 62.3 hours for his work performed at his

---

[10] In Broccoli v. Echostar Comm. Corp., 229 F.R.D. 506 (D. Md. 2005), the Court held that sanctions were warranted against the employer for gross spoliation of ESI evidence.  The Court reduced the fees awarded to the plaintiff.  The Court reasoned that while the hourly rate was reasonable, it found the amount of hours allocated to some tasks was excessive.

regular adjusted reasonable hourly rate, this many hours seems excessive considering two other attorneys were also purportedly performing a similar function. Below, the Court addresses those particular entries that warrant discussion.

On August 18, 2009, Mr. Decker claims three hours to "redraft [Spoliation Memo]. Add case law and argument for contract claims." Among other objections, SSA argues that "Mr. Decker is revising a spoliation memo, not the spoliation brief, so the time is not recoverable." Plaintiffs respond "[f]irst, the word 'memo' represents the memorandum brief in support of sanctions. Second, the contract claims research served two purposes." The Court does not find that the contract issue is connected to the Spoliation Motion for the purpose of determining fees. Therefore, the entire entry is rejected because it is not clear where the spoliation memo work ends and where the contract claim work begins.

On September 20, 2009, Mr. Decker invoices 4.7 hours to "[c]omplete formatting for spoliation memorandum. Begin collecting exhibits." Here, the use of block billing makes it impossible for the Court to make any determination of this entry. Equally troubling is the assignment of this task to counsel instead of non-legal staff within the office. Therefore, the Court rejects this entry.

On September 21, 2009, Mr. Decker claims 10.2 hours to "complete redrafting and edits; complete exhibits; prepare and file motion for sanctions for spoliation." SSA argues these tasks should have been performed by staff, not an attorney. Plaintiffs respond by stating that in the revised petition these hours will be billed at a paralegal's rate. While SSA further states that the "work performed by Mr. Decker was duplicative of the work performed by Ms. Sheedy on the same day," the Court is not persuaded that this is purely redundant work. Therefore, the Court

will award fees here at the paralegal rate of $90 per hour.  Thus for this entry alone, the total is $918.00.

The reductions above result in 44.4 hours.  The Court will apply a 30% reduction to Mr. Decker's adjusted hours here and allow 31 hours.  At Mr. Decker's adjusted reasonable hourly rate of $175 per hour, this totals $5,425.00.  In addition to his hours charged at a paralegal rate, the total for this project is $6,343.00.

### c. Mary Hahn, Esq.

Plaintiffs' Affidavit claims 18.5 hours for Ms. Hahn's work.  SSA objects to Ms. Hahn's invoice of 6.4 hours for "DMD [p]leadings [r]evise spoliation motion draft" on September 12, 2009, because "the time Ms. Hahn spent revising was excessive and duplicative of Ms. Hahn's 9/12/2009, 9/13/2009, and 9/14/2009 entries.  Ms. Hahn seeks to recover 14.4 hours for revisions over a three day period.  This is excessive billing."  Given the Court's uncertainty about the frequency of revisions involved, the Court will reduce Ms. Hahn's revision work to one hour for September 12, 2009.

Therefore, her total hours will be 13.1.  At her adjusted reasonable hourly rate of $250.00, the total fee here is $3275.00.

### d. Steven Schulman, Esq.

Mr. Schulman claims 22.6 hours for his role as a supervising attorney who provided substantive edits.  But as with other invoices, there are also examples of invoice entries that appeared vague and/or redundant.

For example, on August 5, 2009, Mr. Schulman claims 1.1 hours to "[r]eview spoliation cases; conference with team re strategy issues."  The relevant comment states: "[t]o the extent that the meeting also may have addressed summary judgment to some degree, .7 for the meeting

was subtracted." This explanation does not permit the Court to make any meaningful determination as to the nature of the tasks actually being performed or whether the time allocated to accomplish the remaining tasks was reasonable. This entry represents the problem with block billing. For these reasons this entry is rejected.

On September 17, 2009, Mr. Schulman claims 5.5 hours to "[r]eview and revise spoliation motion; conference re summary judgment." This time represents an hour reduction to account for the unrelated conference regarding summary judgment. In this instance, the Court fails to see how, absent a contemporaneous time record, anyone can say with confidence that only one hour was devoted to the discussion of the motion for summary judgment and 5.5 hours to tasks associated with the Spoliation Motion. Therefore, the Court rejects this entry.

Allowing for the above adjustments, Mr. Schulman's hours now stand at 16 hours. The Court will apply a 10% reduction and allow 14 hours, which at Mr. Schulman's adjusted reasonable hourly rate of $300, totals $4,200.00.

### e. Allison Sheedy, Esq.

The Court finds that Ms. Sheedy's entries were reasonable. Therefore, 27.3 hours at her adjusted reasonable hourly rate of $175.00, amounts to $4,777.50.

### f. Isabelle Thabault, Esq.

The majority of the invoice entries for this project by Ms. Thabault were already reduced by Plaintiffs to zero. Thus the Court finds 2.2 hours at her adjusted reasonable hourly rate of $350.00 per hour is reasonable. Ms. Thabault's total is $770.00.

### g. Jessica Weisel, Esq.

The Court rejects the invoice for Ms. Weisel on August 30, 2009, claiming 1.4 hours for the task of "[r]eview spoliation motion." The Court is unable to determine if Ms. Weisel's efforts were redundant absent more detail. Thus the total for Ms. Weisel is zero.

The total for the collective efforts of all attorneys results in a total fee of $24,265.50 for this project.

### 4. Plaintiffs' Reply Brief

Exhibit four represents the time allocated to drafting and filing Plaintiffs Reply in Further Support of Sanctions for Spoliation (the "Reply"). In addition, this exhibit also includes the time expended for filing a letter to the Court subsequent to the Reply, which provides a case decided after the briefings that Plaintiffs allege was directly on point with the underlying issues of the Spoliation Motion and subsequent related motions. In all, this exhibit includes the work of six attorneys, together invoicing 88.4 hours for a total of $16,492.50.

### a. Shalini Agarwal, Esq.

In total, Plaintiffs seek to recover 70.2 hours for Ms. Agarwal's time spent on the Reply. As it appears Ms. Agarwal was the primary attorney involved based on the time entries, 70.2 hours does not seem excessive given the nature of the matter. However several entries are suspect.

On October 20, 2009, Ms. Agarwal invoices for 4.32[11] hours to "review motion for sanctions and opposition." The Court finds 4.3 hours is reasonable.

November 9, 2009, Ms. Agarwal claims 6.89 hours to complete the following tasks: "Revise reply brief on spoliation; email co-counsel re list of missing documents; talk to M Hahn

---

[11] Calculations to the .01 is contrary to prevailing customs and are unsupported here.

re arguments about missing paper documents, ratification, and format of record cites." The Court finds 6.9 hours reasonable for this entry.

On November 10, 2009, Ms. Agarwal invoices 4 hours. The tasks include: "[r]evise [R]eply [B]rief on spoliation; revise arguments on ratification; talk to J Wald about collecting exhibits; draft declaration attaching exhibits." Plaintiffs also state that "[t]his entry was already discounted by 50% to exclude one task out of four that was not related spoliation. This entry is overly conservative as it stands." The Court is troubled by this explanation. First, it fails to identify which of the four tasks the reduction is for. Second, in this context whether the time allocated to perform certain tasks can be described as "conservative" or not is a determination for the Court. Because the Court cannot discern what tasks are to be considered, it is impossible to determine if the time invested was reasonable or not. Therefore, the Court rejects this entry.

On November 12, 2009, Ms. Agarwal claims 4 hours to "[f]inalize spoliation reply brief; draft sealing motion; review individual defendants' motions for summary judgment; talk to I Thabault & M Hahn re ideas for opposition to individual defendants' motions for summary judgment." Plaintiffs supplement this block entry by stating "[t]his entry was reduced from 8.69 hours to 4 hours to reflect the lesser task of conferencing regarding other motions for summary judgment." The Court is not as concerned with the reasonableness of a reduction as it is with the reasonableness of the time being claimed. Here because so many tasks are comingled – some related and some unrelated – the Court rejects this entry.

On March 12, 2010, Ms. Agarwal invoices one hour. The tasks included: "review and edit letter re new authority for spoliation motion; arrange meeting with Jones; telephone conference with Jones to discuss expert report." Plaintiffs claim that the reduction in time is eliminate those things not related to the Spoliation Motion. Accordingly, what remains is one

hour dedicated solely to the letter regarding the Montreal Pension case. However, even if the Court were to accept this explanation, Ms. Agarwal's efforts appear duplicative and excessive in light of Mr. Amlin's invoice below. As such, the Court rejects this entry.

Applying the 13.7 hours reduction brings Ms. Agarwal's hours to 56.5. Thus, 56.5 hours at her adjusted reasonable hourly rate of $175.00 per hour amounts to $9,887.50.

### b. Donald Amlin, Esq.

Mr. Amlin seeks a total of 5.3 hours, of which 4.5 hours were spent researching and drafting a letter to the Court regarding Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 685 F. Supp. 2d 456 (S.D.N.Y. 2010). While this case did not provide case law in a novel area, it was a rather lengthy ESI case that did involve some in-depth analysis of degrees of culpability and other issues related to ESI spoliation issues. The Court finds that in this instance, 4.5 hours is a reasonable amount of time to read and write a letter to the Court regarding a new case. Therefore, 5.3 hours at Mr. Amlin's adjusted reasonable hourly rate of $175.00 per hour totals $927.50.

### c. Joseph Decker, Esq.

Mr. Decker has only one invoice, with regards to the Reply. The tasks include: "review [S]poliation [B]rief; provide additional cites and data; draft response for individual defs. SJ [M]otions." This invoice entry was reduced to one hour. The Court cannot determine the relation of the task involving additional cites and data. The Summary Judgment Motion is clearly not related. The Court rejects this entire entry because it is impossible to divine the work related to the subject at hand versus the summary judgment work.

### d. Mary Hahn, Esq.

Ms. Hahn's invoice entries were reasonable. The entry of November 2, 2009, was one of the very few entries to which SSA raised no objection. Further, it appears that only Ms. Hahn billed for the conference with Ms. Agarwal on November 6, 2009. The remaining entries are clearly related to the Reply. Lastly, unlike other invoices, in this instance, Ms. Hahn's invoices do not involve the comingling of tasks that are both related and unrelated. Therefore, the Court finds 7.8 hours reasonable for the tasks performed. As such, 7.8 hours at her adjusted reasonable hourly rate of $250.00 per hour, amounts to $1,950.00.

### e. Steven Schulman, Esq.

For Mr. Schulman's invoice of October 14, 2009, Plaintiffs state that the "entry was discounted from 2 hours to 1 [hour] to reflect work not directly related to the spoliation Reply that may have been included in the conference with the team." The task for this date include: "[r]eview filings; conference with team; review spoliation brief." The Court accepts this representation. Mr. Schulman's other entries, which the Court accepts as reasonable, result in additional 2.5 hours. Thus, the total hours for this project are 3.5 hours. At his adjusted reasonable hourly rate of $300.00, the total fee here is $1,050.00.

### f. Allison Sheedy, Esq.

On October 15, 2009, Ms. Sheedy invoices point three 0.3 hours for "[conferring] with J. Decker re spoliation reply brief." The Court accepts this representation. Ms. Sheedy's other entry, which the Court accepts as reasonable, is also for 0.3 hours. Thus, her total time allocated to this project is 0.6 hours. At her adjusted reasonable hourly rate of $175.00 per hour, her total fee here is $105.00.

The total for the collective efforts of all attorneys results in a total fee of $13,920.00 for this project.

## 5. Research Expenses

Exhibit five reflects the invoices for legal research. Unfortunately, other than the most basic of information, such as name and date, the original records provide no substantive information regarding the nature of the research. Plaintiffs argue that the nature of the research can be deduced from matching up the research dates with the invoice dates. By doing such, one can determine the nature of the research and its subject matter.

The Court does not agree with Plaintiffs. While it may be logical to view these research entries with corresponding dates to determine whether they are "in connection with filing the Spoliation Motion," this still requires the Court to speculate in large measure. Plaintiffs attempt to remedy this inherent flaw by claiming that because a particular invoice entry was dedicated solely to a particular activity, that the Court must accept that the research of the same date necessarily corresponds to the work being done. The Court finds this approach to be unreasonable.

The Court prefers contemporaneous records – this includes legal research. In the absence of such, the information provided must be sufficient to enable the Court to make a determination about the reasonableness of the task. Here, it is not possible.

## 6. Revised Fees

Exhibit six[12] of Plaintiffs' Affidavit is titled "Revised Fees for Briefs re Objections to Spoliation Order." Plaintiffs' Affidavit breaks this exhibit into two parts: "Plaintiffs' Objections

---

[12] Plaintiffs' Affidavit refers to this as "exhibit 7." This is possibly due to the fact that Exhibit 6 is actually ECF No. 470-7. Exhibit 7 is actually a correspondence from Mr. Decker to Mr. Moriarty, dated May 13, 2009. This letter bears no relevance to discussion of fees as discussed in this section of the Court's Memorandum.

and Reply," and "Plaintiffs' Opposition to Defendants' Objections to Sanctions Order." (ECF No. 470-1, Pls. Aff. 11-12). Plaintiffs state this exhibit represents the "amount of time preparing the Plaintiffs' objections to the non-award of fees and responses to [SSA's] objections to sanctions in Judge Day's Order and Opinion." (Pls. Aff., ECF No. 470-1).

At a minimum this presentation is unclear. For example, on April 13, 2010, Mr. Schulman's invoice reads "[c]onference with team re case status; review defendants objections to sanctions order; review objections to sanctions order." In response to SSA's objections to this entry, Plaintiffs state "[t]his is an excellent example of the flaw in [SSA's] blanket objections. This entry is clearly related to [SSA's] objections, not Plaintiffs' objections." The Court disagrees. Absent the following ad hoc explanation, it is reasonable to read the entry as involving both, particularly given the line of demarcation provided in Plaintiffs' Affidavit, which generally describes the two separate motions as "Plaintiffs' Objections," and "Plaintiffs Opposition to Defendant's Objections."

Plaintiffs claim a total of 19.4 hours and seek a total of $4,457.50 for "Plaintiffs' Objections and Reply." Plaintiffs also claim 10.2 hours and seek a total of $1,580.00 for "Plaintiffs' Opposition to Defendants' Objections to Sanctions Order." According to Plaintiffs' Affidavit, this comes to a total of 29.6 hours. However, upon adding up the totals in exhibit titled "Revised Fees for Breifs re Objections to Spoliation Order," the total hours comes to 27.8. As such, the Court will apply a 30 % reduction and allow 19.46 hours.

Applying this reduction to the entries for "Plaintiffs' Objections and Reply" is as follows. Ms. Agarwal's reasonable hours remains at .4, which at her adjusted reasonable hourly rate of $175.00 per hour, amounts to $70.00. [13] Mr. Decker's reasonable hours are reduced to one hour.

---

[13] This entry is untouched for simplicity only. To the extent that applying the 30% resulted in .01 hours, the Court rounded to whole numbers.

At his adjusted reasonable hourly rate of $175.00, his new total fee here is $175.00. Ms.

Pullom's reasonable hours is reduced to 5 hours. At her adjusted reasonable hourly rate of

$150.00 per hour, Ms. Pullom's total fee for this project is $750.00. Lastly, Mr. Schulman's

reasonable hours are 7 hours. At his adjusted reasonable hourly rate of $300.00, his fee here is

$2,100.00. Thus the total fee for the collective efforts of all attorneys involved is $3,095.00.

Applying this reduction to the entries for "Plaintiffs' Opposition to Defendant's

Objections to Sanctions Order" is as follows. Ms. Agarwal's .2 hours remains. At her adjusted

reasonable hourly rate of $250.00, her total fee is $50.00. Ms. Pullom's reasonable hours are 4

hours. At her adjusted reasonable hourly rate of $150.00 per hour, her total fee is $600.00. Mr.

Schulman's new hourly total is one hour. At his adjusted reasonable hourly rate of $300.00, his

total fee is $300.00. Thus the total fee for the collective efforts of all attorneys involved is

$950.00.

### 7. <u>Oral Argument</u>

On March 16, 2010, there was a two hour hearing before Judge Williams. The vast

majority of the argument involved motions for summary judgment. Mr. Schulman's argument in

connection with the Spoliation Motion comprised approximately six minutes. Plaintiffs'

Affidavit claims 190.73 hours went into preparing for and arguing the Motion for Sanctions.

(ECF No. 470-1, Pls. Aff. 10). Plaintiffs state that "[b]ecause the summary judgment issues were

argued as well as spoliation, Plaintiffs will further reduce the fees and costs by 90% to

$4,562.00."

Unlike the other projects presented in Plaintiffs' Request, here the Court does not even

have the benefit of the disfavored block billing records to review. Instead, the sole record

presented to the Court is the summary chart presented in Plaintiffs' Affidavit. While the Court

has noted that in some situations, summary charts will suffice, here such is woefully inadequate. In this instance, there is nothing presented to the Court that provides dates, individuals, and tasks performed. Aside from this summary chart, the Court has virtually no basis for its determination. As such, the Court will apply a 90% reduction to Mr. Schulman's purported time. Thus the Court finds that 6.5 hours [14] is reasonable for Mr. Schulman's preparation for and argument. The remaining hours of all other individuals for this task are rejected.

Thus 6.5 hours at Mr. Schulman's adjusted reasonable hourly rate of $300.00 is $1,950.00.

## IV  The Fee Award

The Court uses a lodestar analysis to determine attorneys' fee awards, an analysis which involves multiplying the number of reasonable hours expended by a reasonable hourly rate. Robinson v. Equifax Info. Serv., 560 F.3d 235, 243 (4th Cir. 2009), citing Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008). The Court has already addressed the reasonableness of the fee requests and the reasonableness of the hours claimed. In each section the Court has addressed the reasonable of the hourly rate and made adjustments to hours claimed. For simplicity, below is a table that summarizes the particular project and the total fee associated with it.

The totals for each are as follows:

| PROJECT | TOTAL FEE |
|---|---|
| Kevin Hume Deposition | $2,188.75 |
| Noel Espiritu and Marc Sances, Esq. Depositons | $6,365.00 |
| Plaintiffs' Memorandum in Support of Sanctions for Spoliation | $24,265.50 |
| Plaintiffs Reply | $13,920.00 |
| Research | $0.00 |

---

[14] The time claimed by Mr. Schulman was 6.46 hours but for the reasons stated previously the Court notes 6.5 hours.

| | |
|---|---|
| Revised Fees:<br>Plaintiffs' Objections and Reply | $3,095.00 |
| Plaintiffs' Opposition to Defendants'<br>Objections to Sanctions Order | $950.00 |
| Oral Argument | $1,950.00 |
| Grand Total | $52,734.25 |

## V  Conclusion

For the reasons stated herein, the Court awards Plaintiffs fees in the total of $52,734.25.


_____/s/_____
Charles B. Day
United States Magistrate Judge

CBD/sm