IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| JOSEPH ANTONIO, *et al.*,<br>    Plaintiff, | *<br>*<br>*<br>* |
| v. | Civil Action No. 05-cv-2982-AW |
| SECURITY SERVICES OF AMERICA, LLC, *et al.*,<br>    Defendants. | *<br>*<br>* |

**************************************************************************

## **MEMORANDUM OPINION**

Currently pending before the Court is Defendant SSA Security, Inc., d/b/a Security Services of America (hereinafter "SSA")'s renewed motion for summary judgment, Doc. Nos. 482-83.[1] The Court has reviewed the entire record, including the pleadings and exhibits, with respect to the instant motions. No hearing is deemed necessary. Local Rule 105.6 (D. Md. 2010). For the reasons stated below, the Court will GRANT IN PART and DENY IN PART SSA's renewed motion for summary judgment.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are drawn from the Court's prior memorandum opinion, with variations to reflect issues already settled by this Court as well as subsequent developments in the discovery record. This case arises out of the now notorious arson of December 6, 2004, in which five men executed a conspiracy to burn homes, most of which were minority-owned, in "Hunters Brooke," a newly developed neighborhood in Charles County, Maryland. Of the thirty-

---

[1] Because of a filing error, SSA's motion and memorandum of law are actually attached to Doc. No. 483. Thus, for ease of reference, the Court will hereinafter cite to Doc. No. 483 when citing to SSA's memorandum.

two Plaintiffs in this Case, two owned and lived in homes in this neighborhood, while the other thirty had contracted to purchase homes and had participated in their design. Plaintiffs entered into these purchase contracts with two subsidiaries of Lennar Homes, Inc., U.S. Home Corporation, and Patriot Homes, Inc., (collectively, the "Developer"). The individual defendants in this case, Michael Everhart ("Everhart"), Patrick Stephen Walsh ("Walsh"), Jeremy Daniel Parady ("Parady"), Aaron Lee Speed, Sr. ("Speed"), and Roy T. McCann's ("McCann"), (collectively, "Individual Defendants"), have all either been found guilty of, or pled guilty to, serious felony criminal charges in federal court arising from their participation in the arson at Hunters Brooke and have all been sentenced to prison by this Court. Plaintiffs brought this ten-count suit against the Individual Defendants, as well as SSA, the security guard company, ABM Industries, Inc. ("ABM"), its parent, and Security Services of America, LLC ("SSA, LLC"), its predecessor (collectively Corporate Defendants"). In its prior memorandum opinion, this Court dismissed ABM and SSA, LLC from this suit. Doc. No. 415. Thus, of the Corporate Defendants, only SSA remains.

The Developer hired SSA to provide security services at Hunters Brooke, starting on November 12, 2004, until the fires occurred on December 6, 2004. SSA employed Defendant Speed and William Fitzpatrick[2] as security guards to work at Hunters Brooke during this period. Pursuant to the Developer's direction, SSA assigned a single security guard to monitor Hunters Brooke during non-construction hours, from approximately 6:00 p.m. to 5:00 a.m. In this position, the security guard would station himself in a patrol vehicle at the front of the construction site, prevent unauthorized individuals from entering, and patrol the site periodically.

---

[2]Plaintiffs never sought to bring Fitzpatrick in as a party to the suit, and Fitzpatrick was never criminally charged in connection with the arson.

During this period, Defendant Speed and the other Individual Defendants conspired to burn and damage the homes, and allegedly did so with racial animus against African-American and other minority families who planned to move into the houses. While on duty, Speed created a map of the neighborhood and determined the race of each house owner. Then, on December 3, 2004, while on duty, Speed allowed his co-conspirators to deposit flammable liquids within and around the houses in Hunters Brooke.

SSA had received complaints that the guard it had posted at Hunters Brooke was not present at the assigned location during shift hours. Doc. No. 485, Ex. 20 at SSP169. On Saturday, December 4, 2004, a supervisor came by the site at 1:00 a.m. and noticed that Speed, the assigned guard, was not at his post. The supervisor returned two hours later and found Speed asleep in his truck. Doc. No. 485 Ex. 21. There is no evidence that Speed was reprimanded or questioned about his absence.

On December 6, 2004, the morning of the fires, William Fitzpatrick, an employee of SSA who was on duty at Hunters Brooke. Fitzpatrick allegedly left his post before 4:00 a.m., with more than an hour left on his shift. Fitzpatrick has declared that he left his post early because he felt ill, although Plaintiffs indicate that he may have departed early to allow Speed to enter the premises unobstructed. In any case, at 5:12 a.m. Fitzpatrick returned his identification light to SSA's office in Waldorf, Maryland.

At some point between midnight and 3:20 a.m. that morning, Defendant Walsh drove to Defendant Parady's house and picked him up. Walsh and Parady then met with the other co-conspirators, including Speed, in a parking lot in Waldorf, Maryland. Fitzpatrick called Speed at 3:20 a.m., and Speed returned his call at 3:21 a.m. Around 4:00 a.m., the arsonists entered the site, and some of them entered the houses, poured accelerants in them, and lit them on fire. The

arsonists remained there, pouring additional accelerant, for thirty to forty-five minutes, and saw the homes begin to flame. The Charles County 911 Emergency System received a call reporting the fire at 4:54 a.m. The houses sustained serious damage.

Evidence indicates this arson was racially motivated. The Individual Defendants had uttered statements indicating they were angry that African-Americans were moving into the area. On the night of the fire, one of the Individual Defendants allegedly painted the words "Black Jokers" on a dumpster. Additionally, 90 percent of the homes damaged were owned or under contract to African-Americans or other minorities. Finally, one Defendant stipulated that the arson was racially motivated. Doc. No. 375, Ex. 5.

After the arson, the Developer offered to compensate Plaintiffs, and used insurance proceeds to make repairs. The insurance companies, as the Developer's subrogees, filed a lawsuit in this Court against the Corporate Defendants on July 22, 2005, in which they sought to recover payments they made to the Developer under the Developer's property insurance policies. The Corporate Defendants settled the case by "making a lump-sum payment to the Developer's subrogees and obtained a release of all claims without admitting" liability. Doc No. 315. All of the Plaintiffs eventually closed on their house purchase contracts. But Plaintiffs continue to be haunted by the arson and have suffered emotional injuries with physical manifestations, such as insomnia, anxiety disorder, and major depressive disorder.

On November 2, 2005, Plaintiffs brought suit against Individual Defendants, as well as Corporate Defendants, including SSA. This Court has dismissed all claims against SSA except for a negligence claim (Count VI), a negligence in hiring, training, and supervision claim (Count V), and a Maryland Business Occupations and Professions Code claim (Count VII). SSA has now renewed its motion for summary judgment as to these negligence-based claims.

SSA is a security service that advertised itself as providing "Access Control, Client Property Patrol, and Fire Protection." Doc. No. 485, Ex. 9. In hiring its employees, SSA's marketing materials suggest that it performs a "thorough examination of the applicant's background, including verifications of prior employment, education, and personal references." Doc. No. 485, Ex. 11 at ED01-00004803. Speed's personnel file contains no such verifications and SSA had not suggested that it performed any. Doc. No. 485, Ex. 10 at SSP0025-81. Had SSA spoken with Speed's personal references, it would have learned that Speed had recently been in an outpatient mental health clinic. Doc. No. 485, Ex. 1. Additionally, it may have learned that Speed had been expelled from high school for an act of violence against a classmate. Doc. No. 485, Ex. 1. After being hired, Speed had problems at work and in August 2004, got in an altercation with his supervisor and quit. Doc. No. 485, Ex. 21. SSA placed a note in Speed's file stating "not for rehire" after this incident. Doc. No. 485, Ex. 1. However, needing employees in November 2004, SSA rehired Speed and assigned him to Hunters Brooke. Doc. No. 485, Ex. 1.

Plaintiffs allege that SSA's negligence in hiring, training, and supervising its employees allowed or facilitated the intentional torts by the Individual Defendants, which resulted in Plaintiffs emotional and economic injuries. Doc. No. 485 at 23 n.6. However, SSA does not seek summary judgment on the grounds that it did not breach its standard of care. Doc. No. 483. Rather, SSA argues that Plaintiffs' negligence-based claims fail as a matter of law because Plaintiffs experienced only emotional distress and economic loss damages, which are insufficient to sustain a negligence claim under Maryland law.

## II.    STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III. ANALYSIS

    A.    <u>Plaintiffs' Negligence Claims Fail as to the Thirty Plaintiffs Not Living in Hunters Brooke or Owning Property Therein at the Time of the Arson</u>

The Court finds merit in Plaintiffs' arguments as to why the economic and emotional harms alleged should be sufficient to survive summary judgment. However, the Court finds that as a matter of law, Plaintiffs' negligence claims fail as to the thirty Plaintiffs who neither lived in Hunters Brooke at the time of the arson nor owned property there.

As a preliminary matter, both parties agree that under Maryland law, a "plaintiff ordinarily cannot recover for emotional injury caused by witnessing or learning of negligently inflicted injury to the plaintiff's property." *Dobbins v. Washington Suburban Sanitary Commission*, 658 A.2d 341 (Md. 1995). Both parties also agree, however, that where "the act occasioning the injury to the property is inspired by fraud, malice or like motives, mental suffering is a proper element of damage." *Zeigler v. F Street Corp.*, 248 A.2d 703, 705 (Md. 1967); *see also Abbott v. Forest Hill State Bank*, 483 A.2d 387, 391 (Md. Ct. Spec. App. 1984) ("If the act, however, is inspired by fraud or malice, mental suffering is a proper element. To recover, the plaintiff must allege either notice of the mental distress on the part of the defendant *or* that the act was calculated to cause mental distress."). SSA argues that its negligence, if any, does not rise to the level of fraud or malice; thus, the exception allowing negligence claims for emotional harm does not apply. However, in support of its argument SSA cites only to cases in which property was negligently destroyed due a defendant's act. Doc. No. 483 at 6. Plaintiffs contend that because the homes here were not negligently destroyed but intentionally destroyed by the fraud or malice of third parties (the Individual Defendants), their claims for emotional injuries should proceed.

Accordingly, the real question is, upon what basis do courts bar negligence claims for mental distress where the tortuous injury is only to property? One theory is that courts limit recovery over a concern of feigned claims of emotional harm where the plaintiff's property was only negligently destroyed. *See Dobbins*, 658 A.2d at 677-78 (suggesting such a theory). If this is indeed the case, then the rule barring emotional harm claims would not seem to apply here, where Plaintiffs suffered emotional harm due to property that was *intentionally* destroyed, possibly due to racial animus. Although the intentional destruction was not due to SSA, the

7

dispositive issue under this policy rationale would be that Plaintiffs suffered emotional harm that was objectively reasonable due to the intentional nature of the property destruction and its insidious motives. Thus, under this policy basis Plaintiffs could demonstrate how the negligence of SSA in hiring, training, or supervising its employees facilitated the intentional torts that resulted in Plaintiffs' emotional harm.

However, another theory is that courts limit such claims on the policy basis that it would be unforeseeable to most defendants committing unintentional acts of negligence resulting in the destruction of property only, that they would be subject to liability for emotional harm. This policy basis focuses on the level of culpability of the defendant rather than on the reasonableness of the resulting emotional harm in determining whether the plaintiff's harm is foreseeable. Under this rationale, the rule barring emotional harm claims would apply here, where SSA committed at most acts of negligence with no malice or fraud.

In the case at issue, Plaintiffs argue that damages for emotional injuries should be allowed under a foreseeability theory. Plaintiffs contend that it should have been foreseeable to SSA that failure to keep Hunters Brooke secure could lead to criminal acts resulting in emotional harm, rendering recovery proper in this case. Plaintiffs support their theory with reference to a Maryland Court of Appeals case which states that a "viable theory under which we have limited recovery for emotional injuries is based on the rules concerning foreseeability of harm, which courts have used both in determining the existence of a duty owed to the Plaintiff and in resolving the issue of proximate cause." *Dobbins*, 658 A.2d at 678 (citations omitted). Plaintiffs accordingly argue that while emotional harm damages are generally barred because they are unforeseeable where the only injury is to property, such harm was foreseeable in this case and thus presents an exception to the rule.

However, the Court finds that none of the theories above are applicable in this matter because Plaintiffs did not own the Hunters Brooke properties at the time of the arson. The Court is guided by the principle that "In applying the test of foreseeability … it is well to keep in mind that it is simply intended to reflect current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm." *Id.* Currently, Maryland law does not entertain a tort for negligent infliction of emotional distress. *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1065 (1986). Additionally, this Court dismissed Plaintiffs' claims against SSA for intentional infliction of emotional distress. Thus, Plaintiffs are left with negligence claims for emotional harm. However, Plaintiffs did not live in Hunters Brooke at the time of the arson and were not in the zone of danger on the night of the arson.[3] Furthermore, Plaintiffs did not suffer property damage because they had not closed on the homes and thus did not own the properties at the time of the arson. Thus, even if the Court were to agree with Plaintiffs that the exception allowing negligence claims for emotional harm based on property damage should apply in a case like this one, the proper party to bring such a claim would be the one holding legal and equitable title to the properties at the time of the arson. This party was the Developer, and in fact, the Developer did bring a claim against SSA and the parties have settled.[4] Doc. No. 483 at 12.

In sum, Plaintiffs suffered economic damages under their contracts with the Developer as a result of the arson rather than property damages. Plaintiffs have sued the Developer and were compensated for the alleged delay and inconvenience. Although there is no question that Plaintiffs were emotionally invested in the properties at Hunters Brooke, visiting the properties

---

[3] At this point, the Court refers only to the thirty Plaintiffs who were not presently living at Hunters Brooke when the arson occurred.

[4] Not only did the Developer have legal title to the properties at the time of the arson, the contract between Plaintiffs and the Developer provided that the Developer assumed all risk of loss or damage to the Property by fire. Doc. No. 315, Ex. 1 at 6. Thus, as a matter of law, Developer maintained equitable title at the time of the arson as well as legal title.

and participating in their design, their legal claims are founded on emotional harm flowing from economic damages rather than property damages. As such, this Court declines to take the significant steps of: (1) interpreting the exception allowing emotional harm damages for destruction of property to apply here, where SSA committed no fraud or malice; and (2) finding the exception to apply here, where Plaintiffs have no property damage claims in the first place. Moreover, the Court finds that it would not be foreseeable to SSA that its negligent acts would expose it to liability for the emotional harm of Plaintiffs who were neither in the zone of danger at the time of the arson nor suffered property damages as the result of the arson. Thus, the Court grants summary judgment to SSA as to the remaining negligence-based claims (Counts V, VI, and VII) brought by the thirty Plaintiffs who did not yet own property or live in Hunters Brooke at the time of the arson.

    B.    <u>Summary Judgment is Improper as to Plaintiffs Rookard and Potts who were Living in Hunters Brooke at the Time of the Arson</u>

Plaintiffs Rookard and Potts moved into Hunters Brooke with their children four days before the fire. Doc. No. 485 at 27. The night of the arson, their son smelled smoke and awoke Rookard and Potts. Potts looked out the window and saw the house across the street on fire, houses to the left and houses to the right on fire. *Id.* Potts described their escape: "The houses were engulfed in huge flames and you could feel the heat from the houses; it was a terrifying experience. I could see the fear on my children's faces. We were all very nervous and scared. I was particularly worried that the propane tanks of the houses might explode… I feared for everyone's life. I didn't know if we would make it. I was just waiting for an explosion; it was horrifying to see those houses on fire." Rookard and Potts escaped without physical injury, and

their house sustained no physical damage. Rookard and Potts later learned that their house had not been targeted because the arsonists had known it was occupied.

Under Maryland law, plaintiffs may recover for emotional harm when the negligent acts of a defendant place plaintiffs in the zone of danger, causing them to reasonably fear for their personal safety. *See Dobbins*, 658 A.2d at 677 n.1 ("Many of our cases have allowed recovery for emotional injuries when the defendants' conduct put the plaintiffs in fear for their personal safety."). For these types of actions, Maryland law does not require physical injury or property damage. *See Faya v. Almaraz*, 620 A.2d 327 (1993) (allowing recovery for reasonable fear of contracting AIDS after learning plaintiffs had been operated on by a surgeon with AIDS).

SSA argues that Plaintiffs Potts and Rookard were not in the zone of danger because their house was not targeted and experienced no damage due to the fire. SSA points to the fact that Plaintiffs evacuated safely and that Potts is a trained police officer who was carrying his service weapon and had the knowledge and skill to safely evacuate his family. SSA attempts to distinguish from the current matter cases in which a defendant's conduct was found to put plaintiffs in fear for their personal safety. *See Belcher v. T. Rowe Price Foundation, Inc.*, 621 A.2d 987 (Md. 1993) (steel beam fell through an office roof and landed five feet from the plaintiff's desk; *see also Green v. T.A. Shoemaker & Co.*, 73 A. 688 (Md. 1909) (boulder fell through plaintiff's house landing on and breaking plaintiff's bed); *Bowman v. Williams*, 165 A. 182, 184 (Md. 1933) (truck drove into house as man watched from his dining room causing him to fear for the safety of his family). In each case, the plaintiffs were in fact safe from the harm but nevertheless experienced a reasonable fear that such harm was imminent.

In fact, this Court finds the fear of harm experienced by the plaintiffs in the cases referenced by SSA akin to the reasonable fear experienced by Plaintiffs Rookard and Potts. At

11

the time of their evacuation, Plaintiffs did not know that the fire was the result of arson and that their home was not a target. It is reasonable to expect that Plaintiffs experienced great fear of imminent physical harm at the prospect that their house might catch on fire while they were in it or that they would be injured by the explosion of a propane tank during their escape. Because Rookard and Potts have alleged a viable cause of action for negligence under Maryland law for their emotional damages, summary judgment is improper as to their claims.

**IV.     CONCLUSION**

For the reasons stated above, the Court finds that as a matter of law, SSA is not liable for the negligence-based claims brought by the thirty Plaintiffs who neither lived in Hunters Brooke at the time of the arson nor owned property therein. Accordingly, the Court GRANTS summary judgment to SSA as to Counts V, VI, and VII brought by the thirty Plaintiffs. However, the Court finds the negligence-based claims of Plaintiffs Rookard and Potts viable and accordingly DENIES summary judgment as to Counts V, VI, and VII brought by Plaintiffs Rookard and Potts. A separate Order will follow.

| August 30, 2011 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |