**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

|  |  |  |
|---|---|---|
| JOSEPH ANTONIO, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. AW-05-2982 |
| SECURITY SERVICES OF AMERICA, LLC, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE DEPOSITION OF WILLIAM FITZPATRICK TO PRESERVE TESTIMONY AND FOR USE AT TRIAL

Pursuant to Federal Rule of Civil Procedure 16(b)(4), Plaintiffs Terri Rookard and Derrick Potts ("Plaintiffs") respectfully request the Court grant them leave to take the *de bene esse* deposition of William Fitzpatrick for use at trial in accordance with Federal Rule of Civil Procedure 32(a)(4).  Mr. Fitzpatrick was the SSA security guard stationed at Hunters Brooke the morning of the arson, who left his post before his scheduled shift ended.  Mr. Fitzpatrick, whose identity and role have been known to all of the parties in this case since even before this litigation was commenced, offers relevant testimony about SSA's role in the Hunters Brooke arson.  He voluntarily provided a declaration during discovery that this Court relied upon and referenced in three Memorandum Opinions that sustained all of Plaintiffs' negligence claims against SSA.  Mr. Fitzpatrick recently informed Plaintiffs that he will be unable to travel from his home in Kansas to testify at trial due to his medical condition.  Accordingly, Plaintiffs respectfully request that they be granted leave, pursuant to Fed. R. Civ. P. 16(b)(4), to take the *de*

*bene esse* deposition of William Fitzpatrick to preserve his testimony for use at trial pursuant to Fed. R. Civ. P. 32(a)(4)(B) and (C).

## FACTUAL BACKGROUND

William Fitzpatrick was the only SSA guard on duty at the Hunters Brooke neighborhood the evening of Sunday, December 5, 2004 into the morning of Monday, December 6, 2004. Although SSA was being paid to provide security until 5:00 a.m. every morning, Mr. Fitzpatrick's SSA supervisor routinely allowed Mr. Fitzpatrick to leave half an hour earlier in order to return security equipment that Mr. Fitzpatrick borrowed from another site guarded by SSA. (*See* Sept. 12, 2008 Decl. of William Fitzpatrick, ¶ 13, attached as Ex. 1). On the morning of the arsons, Mr. Fitzpatrick was feeling sick and had attempted to contact his supervisor so that SSA could provide a replacement guard to finish Mr. Fitzpatrick's shift. When Mr. Fitzpatrick could not reach his supervisor, Mr. Fitzpatrick left a little before 4:00 a.m. because SSA had never trained him about the company's procedures and policies for leaving early in the case of illness the procedure for contacting someone else in an emergency if he could not reach his primary supervisor. (*See* Ex. 1, Fitzpatrick Decl. at ¶¶ 13-14). Worse, while trying unsuccessfully to find a replacement, Mr. Fitzpatrick had talked to another SSA security guard and revealed that Hunters Brooke would be left unguarded at 4:00 a.m. that morning. That other SSA security guard was Aaron Speed. (*See* Ex. 1, Fitzpatrick Decl. at ¶ 14).[1] After Mr. Fitzpatrick left Hunters Brooke and an hour before the end of his shift, Aaron Speed and four other men entered the unguarded neighborhood and set approximately 16 houses on fire before the fire department was alerted a little before 5 a.m.. Plaintiffs Terri Rookard and Derrick Potts,

---

[1] Mr. Fitzpatrick also stated that Speed left his post at Hunters Brooke several times and that Speed's SSA supervisor had known about it. (*See* Ex. 1, Fitzpatrick Decl. at ¶5).

along with their children, were awakened an hour later by the flames and forced to flee their home through a wall of fire to escape the neighborhood.

After the fires, the federal authorities investigating the arson arranged to meet with all of the security guards who had worked at Hunters Brooke, including Mr. Fitzpatrick.  Two managers of the SSA office responsible for providing security at Hunters Brooke, Anne Lee and Brandi Grafton, instructed Mr. Fitzpatrick not to talk to anyone about the arson, and then arranged to meet with Mr. Fitzpatrick before he was to meet with the law enforcement authorities.  (*See* Ex. 1, Fitzpatrick Decl. at ¶ 17).  Before he met with the federal investigators, Mr. Fitzpatrick met Lee and Grafton at a restaurant in nearby Waldorf, Maryland.  Mr. Fitzpatrick stated that Anne Lee asked him "to lie and tell law enforcement authorities that [Fitzpatrick] was on duty throughout [his] entire scheduled shift", *i.e.*, until 5:00 a.m.  (Ex. 1, Fitzpatrick Decl. at ¶ 18).  Lee and Grafton provided Mr. Fitzpatrick with a replacement log sheet which reported that Fitzpatrick performed a last patrol of the site at 4:30 a.m., a claim that was patently false because Mr. Fitzpatrick admits that he had left more than half an hour earlier. (*See id.; see also* Dec. 5, 2004 log sheets FPD-002946 (Fitzpatrick's log) and FPD-002954 (Grafton's log) attached as Ex. 2).  Mr. Fitzpatrick did lie to the investigators as Lee had requested, although he eventually was forced to confess that he had actually left "well before [his] shift was scheduled to conclude."  (Ex. 1, Fitzpatrick Decl. at ¶ 18).

## PROCEDURAL BACKGROUND

Plaintiffs repeatedly disclosed their intent to call Mr. Fitzpatrick as a witness — in Plaintiffs' initial disclosures and in Plaintiffs' preliminary trial witness list. (*See* Plaintiffs' Initial Disclosure, Feb. 15, 2006, at 8 attached as Ex. 3; Plaintiffs' Amended Initial Disclosures, Sept. 19, 2008, at 10, attached as Ex. 4; Plaintiffs' Preliminary Trial Witness List, Oct. 6, 2008 at 3,

attached as Ex. 5). Mr. Fitzpatrick provided a declaration to Plaintiffs during discovery, which Plaintiffs promptly produced to Defendants with their September 19, 2008 document production and well before the December 1, 2008 deadline to schedule and complete the deposition of all fact witnesses agreed to by all parties. (*See* Sept. 23, 2008 Letter J. Decker to all Counsel referencing production of Fitzpatrick declaration and redacted medical records attached as Ex. 6).[2]

Mr. Fitzpatrick's declaration was submitted to this Court in connection with Plaintiffs' briefing on summary judgment, without objection from Defendant SSA. The Court relied on Mr. Fitzpatrick's declaration in its three memorandum opinions regarding dispositive motions for Plaintiffs' claims against SSA. *See Antonio et al. v. Security Services of America, LLC*, 701 F.Supp. 2d 749, 769 (D.Md. 2010) ('Plaintiffs have presented enough disputes of material fact to survive summary judgment on the issue of whether Fitzpatrick's negligence in leaving his post was within the scope of his employment....Fitzpatrick's declaration states that Bradley Messick, site supervisor, had told him he could leave 30 minutes early that night, and that he actually left a full hour early because he was feeling sick."); *see also* July 19, 2010 Mem. Op. on Reconsideration (Dkt. No. 460 at 13-14) ("Plaintiffs contend that the Court did not consider the direct evidence of the cover-up provided in Mr. Fitzpatrick's Declaration.... The Court believes that the claims Fitzpatrick makes in his declaration—that Lee asked him to tell the FBI that he was on duty throughout his shift, and that Grafton filled out his log—could indicate that Lee and Grafton knew that Fitzpatrick departed from his post early, and that they failed to disavow it."); Aug. 30, 2011 Mem. Op. (Dkt. No. 500 at 3) ("On December 6, 2004, the morning of the fires, William Fitzpatrick, an employee of SSA who was on duty at Hunters Brooke…. allegedly left

---

[2] Mr. Fitzpatrick's declaration included his address at the time his declaration was made, (*See* Ex. 1, Fitzpatrick Decl. at ¶ 2), thus allowing SSA ample time to depose him before the December 1, 2008 cutoff agreed to by all of the parties. (*See* Fifth Stipulated Scheduling Order (Dkt. No. 284-1), filed October 2, 2008).

Page 4 of 13

his post before 4:00 a.m., with more than an hour left on his shift. Fitzpatrick has declared that he left his post early because he felt ill…").

Mr. Fitzpatrick resided in Kansas when he provided his declaration and still resides in that state today. At the time Mr. Fitzpatrick signed his declaration, Plaintiffs intended to call him as a live witness at trial. On January 19, 2012, counsel for Plaintiffs spoke with Mr. Fitzpatrick. At this time, Mr. Fitzpatrick, who lives with and is cared for by his sister, advised Plaintiffs that his medical condition rendered him unable to travel to Maryland to testify at trial. He did indicate, however, that he would be able and willing to sit for a video-taped deposition to be used at trial, so long as this deposition is conducted near his home in Lansing, Kansas, which is less than 25 miles from the Kansas City International Airport.

## ARGUMENT

The District Court has discretion to grant leave for the *de bene esse* deposition of William Fitzpatrick to proceed under either of two standards.[3] *De bene esse* depositions have been allowed in this Circuit after the close of discovery, specifically to preserve testimony for trial when a witness becomes unavailable for any of the reasons cited in Fed. R. Civ. P. 32(a)(4) under a fairness standard. Plaintiffs timely disclosed Mr. Fitzpatrick as a trial witness, produced his declaration allowing SSA 45 days to notice and schedule his deposition if they so desired, and repeatedly referred to the statements in his declaration to sustain key points in Plaintiffs' negligence claims against SSA, which the Court referenced in its decisions sustaining those

---

[3] SSA makes an astounding statement in its Reply Brief for its Motion to Sever Trials: "Mr. Fitzpatrick was never offered or subpoenaed to testify during discovery, as agreed to by the parties and subsequently required by Judge Day. Accordingly, there will be no testimony of Mr. Fitzpatrick during the trial on this issue." Def.s Dec. 28, 2011 Reply Br. (Dkt. No. 521) at 4, n.4. Thus is contrary to the facts. Plaintiffs disclosed Mr. Fitzpatrick as a witness in the trial witness lists that all parties exchanged pursuant Judge Day's Order. SSA itself initiated this early disclosure of trial witnesses so that each party could depose the *opposing parties*' potential trial witnesses. The decision not to depose Mr. Fitzpatrick was SSA's, not Plaintiffs'. Plaintiffs can only believe that SSA missed Fitzpatrick's inclusion on the trial witness list that Plaintiffs produced at the same time all of the other parties disclosed their trial witnesses. (*See* Ex. 5).

claims.  Plaintiffs have no control over Mr. Fitzpatrick's health and will suffer prejudice if this critical witness and SSA employee is not available for trial.

Alternately, the scheduling order in effect may be modified for a showing of good cause and with the Court's consent pursuant to Fed. R. Civ. P. 16(b)(4).  Plaintiffs were diligent in identifying Mr. Fitzpatrick and laying the groundwork for his testimony at trial.  Plaintiffs located Mr. Fitzpatrick, obtained his declaration and produced it before the close of discovery, listed Mr. Fitzpatrick as person with knowledge on Plaintiffs' amended initial disclosures on September 19, 2008 and then explicitly listed Mr. Fitzpatrick as a trial witness in the witness lists the parties exchanged October 6, 2008.  Defendants themselves list Mr. Fitzpatrick as a person with knowledge on their own disclosures.  Plaintiffs submitted Mr. Fitzpatrick's declaration to defend against SSA's motions for summary judgment, and the Court relied on his declaration in denying SSA's request to dismiss Plaintiffs' negligence claims.  Plaintiffs expected to call Mr. Fitzpatrick as a trial witness and could not reasonably have anticipated that his health would prevent him from traveling.  Once Plaintiffs discovered this, Plaintiffs contacted opposing counsel and promptly filed the instant motion when Plaintiffs could not obtain SSA's agreement not to oppose Plaintiffs' request to take Fitzpatrick's deposition.  There is good cause to preserve Fitzpatrick's testimony through a *de bene esse* deposition.

### A. THE COURT SHOULD GRANT LEAVE TO DEPOSE FITZPATRICK TO PRESERVE HIS TESTIMONY OUT OF FAIRNESS CONSIDERATIONS

The District Court has discretion to grant leave for the *de bene esse* deposition of William Fitzpatrick to preserve his testimony for trial, even though discovery has closed.  When a witness becomes unavailable for any of the reasons cited in Fed. R. Civ. P. 32(a)(4), courts in this circuit have looked to policy considerations and principles of fairness to grant leave to depose the witness in lieu of trial testimony.  *See Lucas v. Pactiv Corp.*, C.A. No. 08-cv-00079, 2009 WL

5197838 at *2-3 (W.D. Va., Dec. 22, 2009) (applying considerations of fairness and policy and granting *de bene esse* deposition after close of discovery for witness that became unavailable for trial). As examined in *Lucas*, the court found a fundamental difference between the standard for conducting depositions in discovery and for taking depositions to preserve testimony for trial:

> Considering all of these factors, it is not unexpected that a majority of the courts that have previously considered the argument presented by the defendant's motion in the current case have made what can be fairly described as a federal common law distinction between discovery depositions' and 'trial depositions' ... and have held the latter category permissible even after the discovery deadline has passed.

*Lucas v. Pactiv Corp.*, 2009 WL 5197838 at *4; *see also Bouygues Telecom, S.A. v. Tekelec, Inc.*, 238 F .R.D. 413, 414 (E.D.N.C.2006) ("There is a basic difference between discovery and *de bene esse* depositions. The purpose of a discovery deposition is to discover information; the purpose of a *de bene esse* deposition is to preserve testimony for trial."). The *Bouygues* court, specifically addressed the use of *de bene esse* depositions to preserve testimony and had no problem rejecting the opposing parties' argument that allowing the *de bene esse* depositions would have raised the total number of depositions above the limits set by the court in its discovery order. *See Bouygues Telecom, S.A.*, 238 F.R.D. at 414-415.[4] The fairness consideration balances the burden on the parties for permitting or denying the out of time deposition. The policy considerations favor allowing *de bene esse* depositions, particularly where the witness will provide key testimony going to the merits of the claims. *See The Neighbors Law Firm, P.C. v. Highland Capital Management, L.P.*, C.A. No. 09-CV-352, 2011

---

[4] The *Bouygues* court supported its decision by looking at how other courts treated *de bene esse* depositions, and only then concluded that North Carolina followed those Courts by citing a North Carolina local rule that specifically addressed *de bene esse* depositions. *See Bouygues Telecom, S.A.*, 238 F.R.D. at 414. This Court has no clear statement in its own local rules, although there are provisions encouraging the parties to use *de bene esse* depositions of treating physicians rather than live testimony at trial, because of this Court's recognition of inherent problems with the physician's availability to testify and the allocation of fees that entails. *See* Local Discovery Guideline 3(b).

WL 649925 at *3 (E.D. N.C., Feb. 10, 2011) (allowing *de bene esse* deposition of otherwise unavailable key witness to be scheduled two weeks before trial).

It cannot be denied that Mr. Fitzpatrick is himself a key player and that his testimony supports all of Plaintiffs' negligence claims against SSA.  *First*, Mr. Fitzpatrick can testify about SSA's direct negligence (Count VI) in managing the security at Hunters Brooke: allowing Mr. Fitzpatrick to routinely leave early, stationing only one guard at the site, and having notice that guards were frequently absent from their posts when random visits were paid by an off-site supervisor.

*Second,* Mr. Fitzpatrick can testify that SSA negligently trained him (Count V) by not teaching him that abandoning his post, even if he were ill, was a breach of duty.  SSA likewise failed to provide an adequate backup plan for when guards became sick, or train Mr. Fitzpatrick how to call out and obtain a replacement when he could not reach his primary supervisor, as occurred the morning of the arson.  Mr. Fitzpatrick can testify that SSA negligently rehired Aaron Speed despite Speed's past poor performance, and that SSA continued to post Speed at Hunters Brooke despite having notice that Speed abandoned his post.  (Count V).[5]

---

[5] SSA inexplicably appears to believe that this Court has ruled that SSA is not liable for negligently hiring and supervising Aaron Speed. (*See* Def.'s  Mem. in Support for a Separate Trial (Dkt. No.503) at 10 ("[t]he Court specifically ruled that SSA has no liability for Speed's acts in furtherance of the arson" and "[t]he Court specifically ruled that SSA has no liability for Speed's acts in furtherance of the arson."; *see also* Def.'s Reply Br. (Dkt. No. 521) at 1 ("based on this Court's rulings SSA contends that what remains is a negligence-only case to determine if SSA negligently hired and/or supervised William Fitzpatrick.")). But this Court has explicitly ruled that the negligent hiring and supervision claim survived the first Summary Judgment Motion without narrowing the claim in any way. *See Antonio v. Security Services of America, LLC*, 701 F.Supp.2d 749, 761 (D.Md. 2010).  In its subsequent decisions, the Court continued to discuss SSA's negligent hiring of Speed when addressing this claim. *See* Aug. 30, 2011 Mem. Op. (Renewed Motion for Summary Judgment) (Dkt. No. 500) at 5 (talking at length about SSA's negligent hiring regarding Speed specifically before sustaining the negligent hiring claims for Plaintiffs Terri Rookard and Derrick Potts).; *see also* July 19, 2010 Mem. Op. (Motions for Reconsideration) at 7 (Dkt. No. 460) (confirming the conclusion that SSA likely destroyed  documents "relevant to Speed's hiring, there was more than a two year span where relevant communications could have been deleted or lost."). If, as SSA asserts, Speed's hiring no longer posed any liability to SSA, then this ESI would have been irrelevant, an argument this Court explicitly rejected.

SSA's interpretation also runs afoul of the law.  Maryland's Court of Appeals has found that actions outside the scope of employment may relieve an employer from vicarious liability under *respondeat superior*, it

*Third,* Mr. Fitzpatrick can also testify and authenticate documents that support that SSA managers Lee and Grafton encouraged Mr. Fitzpatrick to lie to federal investigators about the time he left Hunters Brooke, subjecting SSA to vicarious liability for ratifying Mr. Fitzpatrick's breach. (Count VII).

The Defendants would suffer no prejudice from allowing this testimony to be preserved for trial. Plaintiffs disclosed Mr. Fitzpatrick repeatedly as a trial witness, taking pains to meet all deadlines for producing his declaration and providing notice so that he could be deposed, if SSA chose to do so. Plaintiffs also provided SSA with all of the information necessary to locate, contact, and depose Mr. Fitzpatrick during discovery and SSA opted not to do so. SSA cannot claim prejudice for substituting deposition testimony for trial testimony, when the witness was available to them during discovery, after a declaration that outlined the key points of his testimony. Moreover, Plaintiffs have timely raised this issue to allow the parties to arrange the deposition over a month prior to trial, where other courts in this circuit have found two weeks to be sufficient.[6] Finally, Mr. Fitzpatrick's deposition can be completed in less than a day. He

---

does not follow that there is no liability for acts committed outside the scope of employment under a claim for negligent hiring. *Cf,. Henley v. P.G. County*, 503 A.2d 1333 (Md. 1986 (reversing dismissal of negligent hiring and retention claim for acts the Court noted had been held outside the scope of employment.) In *Henley*, a felon on a work release program was made a caretaker for a skills training center to prevent vandalism and theft, exactly the duties SSA, Speed and Fitzpatrick assumed here. The felon, Wantland, caught a 12 year old committing acts of vandalism and murdered him. *Id*. at 1335-36. The trial Court dismissed the case against Wantland's employer for (1) vicarious liability -- because the murder was outside Wantland's scope of employment; and (2) for negligent hiring and retention because there was some question as to whether Wantland, originally hired as a carpenter, had been given the additional duties of looking after the property that eventually resulted in the murder. *Id*. at 1338 and n.2 On appeal, the Court remanded the negligent hiring and retention claim even though the acts were outside Wantland's scope of employment. *Id*. at 1339; *see also Evans v. Morsell*, 395 A.2d 480, (Md. 1978) adopting the language of *Fleming v. Bronfin*, 80 A.2d 915, 917 (DC.Mun.App. 1951) ("One dealing with the public is bound to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee. When an employer neglects this duty and as a result injury is occasioned to a third person, the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of his employment.")

[6] To the extent that live testimony is favored over the use of a deposition transcript, Plaintiffs propose to take Fitzpatrick's deposition via videotape. *See Sandidge v. Salen Offshore Drilling Co*., 764 F.2d 252, 259 n. 6 (5th Cir. 1985) *citing United States v. Tunnell*, 667 F.2d 1182 (5th Cir.1982) ("The videotape made it possible for the trial court to gauge the witness' attitude more accurately than would have been possible with just a cold

resides near a major airport (Kansas City International), allowing the travel for the deposition to be accomplished without disruption to the pre-trial schedule and without substantial burden on counsel for SSA.

Plaintiffs, on the other hand, would be substantially prejudiced, if, through no fault of their own, Mr. Fitzpatrick were unavailable to testify at trial. Plaintiffs felt no need to depose him, having obtained his sworn declaration and believing he would be able to testify in person at trial. It was only after Plaintiffs spoke with Mr. Fitzpatrick just last week that Plaintiffs learned that Mr. Fitzpatrick's health renders him unable to travel to Maryland for trial in April.

The Court should allow Mr. Fitzpatrick's *de been esse* deposition to proceed because (1) it would prejudice Plaintiffs to penalize them for their witness's ill health; (2) it would not prejudice SSA any more than Mr. Fitzpatrick's live testimony would have; and (3) the testimony goes to the merits of all three of Plaintiffs' negligence claims against SSA and policy favors allowing evidence that goes to the merits of the case to reach the jury.

### B. THE COURT SHOULD GRANT LEAVE TO DEPOSE FITZPATRICK BECAUSE THERE IS JUST CAUSE TO MODIFY THE SCHEDULING ORDER

Alternately, the Court has discretion to modify its own scheduling order to allow depositions after the close of discovery.[7] Under Rule 16(b), which governs the issuance of a scheduling order, "[a] schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). The standard here is not one of fairness, but rather rests primarily on whether the moving party was diligent in procuring the evidence that they now seek to obtain outside of the scheduling order. "Good cause means that scheduling deadlines cannot

---

deposition record. This is a very persuasive argument for the use of videotape depositions in lieu of the traditional transcriptions.")

[7] Such a deposition could be used at trial in lieu of personal testimony. Pursuant to Federal Rule of Civil Procedure 32(a)(4)(B), (C), Fitzpatrick is an unavailable trial witness whose deposition may be used at trial because [B] he lives in Kansas more than 100 miles from the trial; and [C] he cannot travel to the trial due to illness.

be met despite a party's diligent efforts." *Morgan v. Prince Georges County, Md.*, C.A. No. AW-09-1584, 2010 WL 2891700 at *2 (D.Md. July 20, 2010), *citing Kinetic Concepts, Inc. v. Convatec Inc* ., No. 08-918, 2010 WL 1418312, at *3 (M.D.N.C. Apr. 2, 2010).  Good cause is not related to showing a lack of prejudice to the opposing party.  *Id., citing Cole v. Principi*, No. 02-790, 2004 WL 878259, at *7 (M.D.N.C. Apr. 22, 2004).

     Plaintiffs were diligent in declaring that they intended present Fitzpatrick as a trial witness.  Plaintiffs disclosed him as a witness repeatedly during discovery.  (*See* Exs. 3-5).  Plaintiffs timely produced his declaration so that some portion of the factual testimony Plaintiffs expected Fitzpatrick to give would be available for Plaintiffs to use at summary judgment.  As trial approached, Plaintiffs contacted Fitzpatrick and only then learned that he could not travel to Maryland to testify.

     Plaintiffs promptly notified the Court of Mr. Fitzpatrick's unavailability at the January 20, 2012 hearing, and then contacted SSA to inform them of Plaintiffs' intent to preserve Fitzpatrick's testimony through a *de bene esse* deposition.  Plaintiffs have been diligent and only seek leave of the Court now because Fitzpatrick's health, a factor out of Plaintiffs' control, necessitates taking his deposition to preserve his testimony.  Therefore, even if the Court does not find that special circumstances permit granting a *de bene esse* deposition in lieu of trial testimony, the Court may nonetheless allow a "discovery" deposition that could be used at trial because there is just cause to do so.

**CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiffs' motion for leave to depose William Fitzpatrick to preserve testimony and for use at trial.

Respectfully Submitted

By: __/s/____Steven H. Schulman_____
Steven H. Schulman (Bar No. 17144)
sschulman@akingump.com
Jeffrey M. King (Bar No. 18287)
jking@akingump.com
Larry E. Tanenbaum (Bar No. 17988)
ltanenbaum@akingump.com
Joseph L. Decker (admitted *pro hac vice*)
jdecker@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 887-4000
Fax: (202) 887-4288

Isabelle M. Thabault (Bar No. 16600)
isabelle_thabault@washlaw.org
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 319-1000
Fax: (202) 319-1010

Attorneys for Plaintiffs

Dated: January 27, 2012