# EXHIBIT  1

#613196v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

- - - - - - - - - - - - - - x
                 :

JOSEPH ANTONIO, et al.,    :

       Plaintiffs,    :    Case No. AW-05-2982

      v.            :

SECURITY SERVICES OF    :
AMERICA, LLC, et al.,    :

       Defendants.    :    October 4, 2010

- - - - - - - - - - - - - - x    Greenbelt, Maryland

# ORIGINAL

## TELEPHONIC MOTIONS HEARING

BEFORE MAGISTRATE JUDGE CHARLES B. DAY

APPEARANCES:

For the Plaintiffs:    LARRY E. TANENBAUM, Esq.
                       JOSEPH DECKER, Esq.
                       Akin, Gump, Strauss, Hauer and
                       Feld, LLP
                       1333 New Hampshire Avenue, N.W.
                       Washington, DC  20036

                       ISABELLE M. THABAULT, Esq.
                       Washington Lawyers Committee for
                       Civil Rights
                       11 Dupont Circle, N.W.
                       Suite 400
                       Washington, DC  20036

For SSA:             GERRY H. TOSTANOSKI, Esq.
                       Tyding and Rosenberg, LLP
                       100 E. Pratt Street, 26th Floor
                       Baltimore, MD  21202

Proceeding recorded by electronic sound recording,
transcript produced by transcription service.

1          Even the individual Defendants in this case, they

2     are not allowed to look at it even though they are a party to

3     the case.   So clearly the Plaintiffs understand how sensitive

4     psychiatric and psychological information is to the parties.

5          None of these reports have ever been produced, the

6     two reports that are at issue to anyone outside the

7     litigation there has not been testimony that is public in

8     this.

9          So all it is is the reports that were between

10    parties in arbitration and lawsuits and have never been,

11    Mr. Tanenbaum said there will be more protection of these

12    reports but these reports have never been produced outside

13    the exact parties to that litigation based on my

14    understanding, Your Honor.

15         So I do not feel comfortable producing reports that

16    other parties object to and that is the stance that we have

17    taken Your Honor.

18         Just as I have put this in my affidavit and I told

19    this, I have never seen these reports.   There is not

20    something that I am trying to --- or hide anything in these

21    reports but I am trying to do what I thought was right under

22    the circumstances.

23         THE COURT:   Let me pick up on that, I think that

24    the Defendants are absolutely correct in not producing this

25    information without consent or a Court order.   Certainly the

1     HIPAA Regulations make that clear for us.

2              I am, however, going to require production of these

3     three identified reports with redactions of all personally

4     identifiable information.  I am also going to require that

5     these disclosures are made in full compliance with HIPAA

6     Regulations.

7              That is that the information should be strictly

8     limited to use in this litigation, it should not otherwise be

9     disclosed, all information, all copies of that information

10    should be returned to Dr. Killen at the conclusion of the

11    litigation.

12             This information should be made available only to

13    Plaintiffs' counsel and Plaintiffs' counsel's experts.

14    Plaintiffs' counsel will have each expert sign a non-

15    disclosed or confidentiality document or agreement reflecting

16    their understanding of these rules.

17             I do think that the information is relevant to the

18    issue of Dr. Killen's criticisms of Plaintiffs' expert

19    opinions regarding emotional stress and post-traumatic stress

20    disorder.

21             Therefore, they are going to be committed to

22    explore it in this limited context, the potential for

23    inconsistencies regarding their criticisms of that

24    methodology.

25             The scope of discovery has been sufficiently

1    narrowed as to the concerns of the Defendants that have been

2    noted, I do not think there is any burden involved for

3    Dr. Killen to produce the three records that she admits

4    possessing and I am not going to entertain any notion of

5    allowing counsel for these patients which are not subject to

6    this discussion interviewed on this issue.

7            It is succinct, it is limited, it is for the

8    purposes of exploring either some cross examination and other

9    techniques of impeachment, what her criticisms are and how

10   they are framed, if you will, with her past examinations.

11           But I do not want anything other than what has

12   already been disclosed to get out into the public arena with

13   respect to these patients.

14           So there is an order of the Court for you and

15   therefore that motion will be granted with limitations as

16   expressed.

17           MS. TOSTANOSKI:  Your Honor, there are only two

18   reports, there is no report in Rhodes.

19           THE COURT:  I did hear that and I understand the

20   issue in the sense that she thinks there is three, your

21   counsel whoever it is on the patients side says there was no

22   report.  She has to respond from her file --

23           MS. TOSTANOSKI:  --- does agree that there is not a

24   report.

25           THE COURT:  Well then she needs to put forth in

1    maybe some form that the parties accepted and if the parties

2    cannot accept anything other than maybe an affidavit or

3    whatever indicating that she searched all her records and

4    there is nothing in her possession, custody or control that

5    reflects this third report.  I just want her to provide as

6    much as she has got.

7              MR. TANENBAUM:  Your Honor, counsel did say and

8    maybe it is just a --- pressure problem that there is a

9    witness statement and that may have been what Dr. Killen is

10   referring to, so I would suggest that we at least get the

11   witness statement if that is what she was referring to.

12             THE COURT:  If I understand it correctly, I thought

13   she was being critical of the methodology and I am not so

14   sure that a witness statement gets -- never mind, let me hear

15   further.

16             MS. TOSTANOSKI:  The witness statement was written

17   by the lawyer it was not written by Dr. Killen.  It is just

18   the lawyer saying Dr. Killen is mine -- Dr. Killen I don't

19   believe has ever seen this witness statement.  Under

20   Maryland --

21             THE COURT:  24(b)(4) statement.

22             MS. TOSTANOSKI:  Right, that is exactly what it is,

23   it is just like you know and I expect her to say blah, blah,

24   blah.  I do not believe she was ever deposed so it was I

25   think an arbitration and Your Honor in that particular

1    case --

2              THE COURT:  I cannot have both of you talking at

3    once, you have to let her finish.

4              MS. TOSTANOSKI:  The attorney was particularly

5    concerned because his client was a minor, it has to do with a

6    sex case with a minor so he was the one that was extremely

7    concerned.  But as far as I understand, Your Honor, there is

8    no report it is just a witness statement authored by the

9    lawyer for purposes of an arbitration that was going forward.

10             MR. TANENBAUM:  Your Honor I think, let me just

11   check real quick I am trying to find the letter.   I believe

12   the letter which I cannot find right now says that

13   Dr. Killen was deposed on three days in that case.

14             So there was some publication with her opinions I

15   would assume, I haven't heard her deposition, but how about

16   we get production of whatever it is in Dr. Killen's file that

17   she thought was a report.

18             THE COURT:  I am not going to have five

19   explorations here.  I thought you narrowed it down pretty

20   good in terms of the information she has provided to you

21   directly saying I got three reports.  I am willing to give

22   you those three reports but now I have heard it is something

23   from the report, I have heard a 26(b)(4) statement, I have

24   heard now we want to go into the files.

25             Basically, if she wrote up a report where she was

1    talking about the methodology for a discerning post-traumatic

2    stress or something else that is relevant to this case, fine

3    you get the report but I am not allowing you to go in and get

4    treatment records or anything else that will in some way

5    allow you to extrapolate her opinion on the subject.  If she

6    wrote it down you get it.

7            MR. TANENBAUM:  Okay, and we would not want that.

8            THE COURT:  Okay.  So I think we have put No. 454

9    to rest for now and hopefully you all can work out any other

10   details that need to be worked out.

11           Let me move over now to document item, I am sorry,

12   electronic case filing number 471 which is Defendant's Motion

13   to Quash the Deposition of Frank Slaton and/or for Entry of a

14   Protective Order.  I will hear from the defense first.

15           MS. TOSTANOSKI:  Your Honor, thank you so much for

16   hearing us so quickly, we appreciate that we finished our

17   briefing on Friday and that Your Honor was willing to hear

18   this on Monday.

19           As Your Honor knows there is an order by Judge

20   Williams in this case that submitted some additional

21   depositions to go forward and we have done lots of discovery

22   in this case, Your Honor, dozens and dozens and dozens of

23   depositions.

24           This is hopefully the last deposition and we have

25   tried very hard not to involve the Court in any of our prior