**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| JOSEPH ANTONIO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. AW-05-2982 |
| | ) | |
| SECURITY SERVICES OF AMERICA, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR ENTRY OF FINAL
JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b) AND
FOR STAY OF AARON SPEED'S TRIAL PENDING APPEAL**

In their opposition briefs (Dkt. Nos. 567 and 568 respectively), Defendants SSA Security,

Inc., ("SSA") and Aaron Speed ("Speed") both attack Plaintiffs' intentions in filing the instant

motions.  To be clear, Plaintiffs have legitimate reasons to have their day in court against Aaron

Speed, but cannot afford to do so unless that trial is coupled with their claims against his former

employer, SSA.  This reality has been obvious to all parties since the case was filed in 2005.

Accordingly, because Plaintiffs believe they have meritorious appellate issues against

SSA that may very well result in a remand and future trial against SSA, Plaintiffs petitioned the

Court for the entry of judgment against SSA and the stay of the case against Speed in order to

preserve their opportunity to obtain a jury verdict and judgment against Speed in the event that

appeal is successful.  Rather than answer the legal grounds for these motions, both SSA and

Speed repeatedly emphasize that Plaintiffs do not anticipate being able to recover compensation

from Speed – but money is not, and has never been, the main reason that the remaining 30

1

Plaintiffs want to obtain a jury verdict and judgment against Speed, the arsonist who exploited

his position at SSA to access their neighborhood and plan the arsons.

## ARGUMENT

### I.        THERE IS NO JUST REASON TO DELAY ENTRY OF JUDGMENT

In arguing that this Court should not enter judgment, SSA responds with conclusory

statements rather than analyzing the five factors set out by the Fourth Circuit in *Braswell*

*Shipyards v. Beazer East, Inc.*, 2 F.3d 1331, 1335-36 (4th Cir. 1993) (adopting factors set out in

*Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 364 (3d Cir. 1975).  As

explained in Plaintiffs' opening brief, all five factors favor entry of a judgment:  (i) the claims at

issue on appeal against SSA and the non-adjudicated claims against Speed do not overlap; (ii) a

decision at trial against Speed would moot an appellate decision only if a jury found Speed not

liable for *any* of the claims, highly unlikely given Speed's guilty plea; (iii) there is no possibility

that some future appeal would again have to consider the same legal issues of that would be

appealed now; (iv) there are no counterclaims or cross-claims that would affect a judgment; and

(v) the determination of the Fourth Circuit might obviate the need to try Speed at all, furthering

judicial economy.

Rather than analyze these factors, SSA attacks Plaintiffs' motives, makes factually

incorrect statements about the case posture on remand, and mischaracterizes the law with

selective quotations.  *First*, the fact that Plaintiffs cannot afford to try a case against Speed alone

is no surprise to anyone, and does not mean that they seek to inflame the jury against SSA.  It is

both logical and proper that Plaintiffs would seek a unified trial against SSA and its former

employee, who used his position and exploited SSA's shoddy supervision to commit the arsons.

Now that there is only one individual defendant, a single trial involving only SSA and its former

employee presents clearer issues than a trial that would include individual defendants with no prior connection to SSA.

*Second*, SSA mischaracterizes the logistical difficulties in a remanded trial by contending that the Plaintiffs would be different because Terri Rookard and Derrick Potts have remaining claims against Aaron Speed.  This is plain wrong. The settlement agreement SSA drafted and signed with those two plaintiffs specifically released their claims against all former SSA employees, *including Speed*.  Plaintiffs stated clearly in their memorandum in support of these motions that this Court's July 6, 2012 Consent Order dismissed the claims of Plaintiffs Terri Rookard and Derrick Potts against both SSA and Speed.  Thus, the only remaining claims against Speed are those brought by the 30 remaining Plaintiffs – the same Plaintiffs who will appeal the judgment in favor of SSA.  Accordingly, logistics do not weigh against a entering a judgment in favor of SSA, staying the claims against Speed, and proceeding with a unified trial if the appeal against SSA is successful.

*Third*, rather than following the Fourth Circuit's direction to examine the effect of an immediate appeal on the remaining claims, to the extent SSA performs any analysis, it selectively cites cases that in fact do not support denying the request to enter final judgment. SSA asserts that certification is a "remedy [that] should be reserved for the **infrequent harsh case**." (SSA Opp., Dkt. No. 567 at 5, emphasis in SSA brief, citing *Curtiss-Wright Corp. v. General Electric Co.*, 466 U.S. 1, 5 (1980)).  This citation is out of context and inapplicable; as the Court later explains:

> However accurate it may be as a description of cases qualifying for Rule 54(b) treatment, the phrase "infrequent harsh case" in isolation is neither workable nor entirely reliable as a benchmark for appellate review. There is no indication it was ever intended by the drafters to function as such...
>
> There are thus two aspects to the proper function of a reviewing court in Rule

54(b) cases. The court of appeals must, of course, scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is the one most likely to be familiar with the case and with any justifiable reasons for delay. The reviewing court should disturb the trial court's assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable.

*Curtiss-Wright*, 446 U.S. at 10 (reinstating the district court's Rule 54(b) certification by giving

"substantial deference" to the district court's analysis about interrelationship of the claims)

(internal citations omitted).

SSA also states that certification is "tilted from the start against fragmentation of

appeals."  (SSA Opp., Dkt. No. 567 at 5, quoting language from *Spiegel v. Trustees of Tufts*

*College*, 845 F.2d 38, 43 (1st Cir. 1988)).  That court in fact opined:

The process, tilted from the start against fragmentation of appeals, is *necessarily case-specific*. It entails an assessment of the litigation as a whole, and a weighing of all factors relevant to the desirability of relaxing the usual prohibition against piecemeal appellate review in the particular circumstances. If, in consequence of this examination, the district court concludes that entry of judgment under Rule 54(b) is appropriate, it should ordinarily *make specific findings setting forth the reasons for its order*.

*Id*. (emphasis added).

Thus, the Court should reject SSA's opposition because its arguments rely on precisely

the sort of summary statements – lacking any actual analysis of the facts before this Court – that

the Supreme Court and the Circuit Courts have found to be reversible error.  The factors in this

case support entry of a final judgment.

## II.     THE COURT SHOULD STAY PROCEEDINGS AGAINST SPEED PENDING AN APPEAL

Both SSA and Speed trivialize the hardship to Plaintiffs if a stay is denied. Everyone has

known from the outset the financial reality that a separate trial against Speed was not financially

feasible.  This does not mean that Plaintiffs do not have legitimate reasons to want their day in

court against Aaron Speed that go beyond recovery of any money judgment entered against

him.The case against Speed is personal.  Plaintiffs bring claims against Speed for civil rights

violations.  For his part, Speed admits to specifically targeting *these* Plaintiffs in his plea

statement.  Understandably, Speed is the face most of the Plaintiffs associate with the arson, and

they understandably link him to his former employer.  For example, in her deposition, Beverly

Rowe described hearing the Honorable Judge Roger Titus tell three Defendants at a sentencing

hearing that their actions had set back race relations in Maryland and Charles County – but of the

three men being sentenced, she could only identify Speed.  (*See* 01/25/2008 Dep. Beverly Rowe

at 215:02-12, attached as Ex. 1).  Likewise, Carolyn Clark testified that she based her belief that

the arson was racially motivated to racist remarks she attributed to Aaron Speed.  (*See*

02/12/2008 Dep. Carolyn Clark at 59:06-12, attached as Ex. 2).  She could not name any other

defendant who also made racist remarks.  (*Id.*).  Similarly, Harold Jewett stated his belief that the

arsons were racially motivated stemmed from statements by another of the individual defendants

that Speed was upset that African-Americans were moving into Hunters Brooke.  He could not

recall that the remarks were made by Jeremy Parady or that Parady may have later recanted.

(*See* 01/31/2008 Dep. Harold Jewett at 157:16-158:10, attached as Ex. 3).[1]

        Speed is the face of SSA to the remaining Plaintiffs because he took advantage of his

position as an employee to exploit SSA's security lapses when he perpetrated the arson.

Nonetheless, Plaintiffs have not had their day in Court against Speed.  Speed did indeed serve a

---

[1] A handful of the remaining Plaintiffs recall personal encounters with Speed.  Jacque Hightower thought Speed had been rude when he stopped the Hightowers' car and shone a flashlight in their eyes during one of the Hightowers' visits to their house.  (*See* 05/12/2007 Dep. Jacque Hightower at 135:08-138:01, attached as Ex. 4). Mr. Hightower stated that he had encountered Speed on five different occasions prior to the arsons.  (*Id.*).  The Swoopes testified to a fairly lengthy personal conversation with Speed, who told them that his young son had died. (*See* 03/20/2008 Dep. Leonard Swoopes at 79:21-83:05; 04/14/2008 Dep. Evora Swoopes at 125:21-128:12, attached as xs. 5, 6 respectively).  Both Gregory Gibbs and Jacque Hightower recall seeing Speed at Hunters Brooke

prison sentence, but he never faced either his victims or a jury with respect to his participation in the arsons; rather he plead guilty to a single conspiracy charge. A jury verdict and a judgment against Aaron Speed would represent a vindication of Plaintiffs' rights even in the absence of an actual damages award.

The contention by Speed that Plaintiffs have exhibited a "demonstrated lack of interest in Speed's liability" is farcical. (Speed Opp., Dkt. No. 568 at 7). Speed's own admissions in his plea agreement set forth his liability, and in any event Plaintiffs did question him about his participation in the arson during his deposition. Furthermore, Plaintiffs invested significant effort to pursue this suit against the individual defendants, all of whom were insolvent, including enduring significant delays to commencing discovery in order to accommodate their criminal trials and appeals, or to depose the individual defendants while all five of them were still incarcerated in federal prison. These delays contributed to extending this case's duration to seven years. Plaintiffs believe a further delay in order to complete this effort is not as unreasonable nor as one-sided a hardship as Speed maintains.[2]

Nor should this Court lend any credence to Speed's assertion that Plaintiffs' hardship is one Plaintiffs "created by continuing to pursue Mr. Speed" or that Plaintiffs should be forced to overcome this hardship "by dismissing [Speed], just like [Plaintiffs] did with the other individual defendants." (Speed Opp., Dkt. No. 568 at 7). Speed is quite obviously in a different position

---

directing traffic on the morning after the arsons. (*See* 03/18/2008 Dep. Gregory Gibbs at 62:20-63:07, attached as Ex. 7; Ex. 4, Dep. Jacque Hightower at 142:21-143:13).

[2] Speed argues that *Landis v. N. Am. Co.* supports rejecting a stay as "immoderate." (Speed Opp., Dkt. No. 568 at 4-5, citing *Landis*, 299 U.S. 248, 256 (1936)). However, *Landis* involved a stay imposed before the defendants had even filed an answer, conditioned upon a determination of the constitutionality of The Public Utility Holding Company Act of 1935. The Supreme Court estimated that it would likely take more than two years for the constitutionality question to even reach them. *See Landis*, 299 U.S. at 256. The Supreme Court, however, did not agree with the Circuit Court and reject a stay altogether. The Court instead remanded the stay order to the district court, indicating that a stay until the "test suit" was decided (possibly as much as a year in the future) and not waiting for an appeal would be within the discretion of the trial court to decide. *See id*. at 258.

than the other individual defendants, as he represents the source and cause of Plaintiffs'
economic and (primarily) emotional injuries.  Plaintiffs want to obtain a verdict against Speed,
but can afford to do so only if a trial against him is stayed pending an appeal regarding SSA's
vicarious liability for Plaintiffs' claims against Speed.

Nor should this Court give much weight to Speed's argument that a stay at this point
represents a hardship because he wants "to bring this chapter to a close, put this entire matter
behind him, and begin a fresh start."  (*Id*. at 3).  Speed is not prejudiced by a stay.  Plaintiffs will
dismiss the claims against Speed if the Fourth Circuit rejects SSA's vicarious liability.  In the
event of a remand, Speed would not have to appear first as a defendant at his own trial and then
again as a key witness in a trial against SSA.  A stay therefore *reduces the burden* on Speed by
minimizing his appearances before this Court, or possibly not requiring his presence at all.

Speed also argues that the potential delay prejudices Speed's case as "certain witnesses
may be difficult to locate years from now."  (Speed Opp., Dkt. No. 568 at 5).  An examination of
Speed's witness list reveals only two witnesses that are not also listed by Plaintiffs — his wife
and mother, witnesses who are not likely to disappear from Speed's life.  (*See* Oct. 6, 2008 letter
from K. Preteroti to Counsel of Record, attached as Ex. 8, listing Tamara Speed (his wife) and
Terri Douglas (his mother)).  Speed's ability to litigate this case is no more prejudiced by a delay
than Plaintiffs' ability to do so.

Finally, both oppositions make shallow arguments that a stay would still result in two
separate (severed) trials and not provide the judicial economy that Plaintiffs propose.  Plaintiffs
are clearly asking this Court to revisit its decision to sever the cases in light of the current posture
of the case.  If, on remand, SSA's liability stems directly from Speed's acts as its employee, then
all of the supposedly inflammatory facts about Speed's conduct that raised evidentiary concerns

for trying a negligence case against SSA with a civil rights case against Speed evaporate.  The

necessary (prejudicial) facts against Speed would be elements of the same causes of action

against Speed and SSA.  There would be no need for separate trials.

Plaintiffs' hardship in foregoing individual justice against the man they most closely

associate with the arson, the fact that a stay limits or may eliminate Speed's participation

altogether, and the interests of judicial economy favor granting a stay pending an appeal of the

vicarious liability claims against SSA.

## CONCLUSION

Plaintiffs submit that for these reasons, the entry of final judgment pursuant to Rule 54(b)

is appropriate so Plaintiffs can take an immediate appeal.  Plaintiffs also respectfully request that

this Court stay proceedings against Aaron Speed pending an appeal to allow Plaintiffs the

opportunity to present their case against Speed to a jury.

Respectfully Submitted
By: __/s/____Steven H. Schulman_____
Steven H. Schulman (Bar No. 17144)
sschulman@akingump.com
Jeffrey M. King (Bar No. 18287)
jking@akingump.com
Larry E. Tanenbaum (Bar No. 17988)
ltanenbaum@akingump.com
Joseph L. Decker (admitted *pro hac vice*)
jdecker@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 887-4000
Fax: (202) 887-4288

Isabelle M. Thabault (Bar No. 16600)
isabelle_thabault@washlaw.org
Megan Whyte (Bar No. 18255)
megan_whyte@washlaw.org
Washington Lawyers' Committee
for Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 319-1000
Fax: (202) 319-1010
Attorneys for Plaintiffs

Dated: October 22, 2012